332 P.2d 493

The LUSK CORPORATION, an Arizona corporation and Broadway Construction Co., Inc., an Arizona corporation, Appellants,

v.

George H. BURGESS and Phyllis J. Burgess, husband and wife, Appellees.

No. 6370.

Supreme Court of Arizona.

Nov. 26, 1958.

This is an appeal by appellants, defendants below, from a judgment entered in favor of the appellee plaintiffs. The parties will be referred to as defendants and plaintiffs as they appeared in the trial court. The cause was tried to the court sitting without a jury and findings of fact were requested by the defendants.

From the record it appears that plaintiffs, husband and wife, entered into a written contract with defendants for the construction and purchase of a certain house and lot in the Highland Vista subdivision of Pima County, Arizona. Prior to the execution of this contract agents for the defendants made oral representations to plaintiffs that the adjoining lot across the alley to the back of plaintiffs' residence would be used for the purpose of constructing a burnt adobe service station with a gravel-covered roof; that the plans had already been drawn up and that they could see them; that it would be the latest thing in the west; that Texaco had drawn the plans and were all for it. The agent also represented that a patio wall would be built on the service station lot between the service station and plaintiffs' proposed house, and that the service station would have a low roof and the architecture would conform to the architecture of the houses in the subdivision. After making these representations defendants conveyed this lot without restriction to third persons who erected upon the lot a service station con-

Scruggs & Rucker, Tucson, for appellants.

Harold C. Wheeler, Tucson, for appellees.

PHELPS, Justice.

structed of red brick and painted white. This service station did not conform to the representations nor to the architecture of the houses in the Highland Vista subdivision. In addition to the service station, a square cement block building containing a barber shop and beauty shop was built on a portion of the service station lot immediately adjoining the lot sold to the plaintiffs by defendants. Plaintiffs were not informed that any buildings other than the service station building were to be constructed on the service station lot. On these facts the trial court entered a judgment in favor of the plaintiffs and against the defendants in the amount of $1,500, together with costs and disbursements incurred in the action.

Defendants essentially have made three assignments of error. First, defendants contend that the judgment is not supported by the evidence because defendants' promise was that a future act would be performed and plaintiffs have not proved by a preponderance of the evidence that at the time this promise was made the promisors in fact did not intend to carry out their promise. In the case of Waddell v. White, 56 Ariz. 420, 108 P.2d 565, 569 we said:

"* * * Representations which give rise to an action of fraud must, of course, be of matters of fact which exist in the present, and not merely an agreement or promise to do something in the future, or an expression of opinion or judgment as to something which has happened or is expected to happen. To this there is one exception, that when a promise to perform a future act is made with the present intention on the part of the promisor that he will not perform it, it is such a representation as will give rise to an action of fraud."

The trial judge found that the representations made by the defendants or their agents were false and known to be false when made and relied upon by plaintiffs and that they had a right to rely upon them.

It appears from the evidence that the representations concerning the service station were made to plaintiffs between June 2, 1954 and June 9, 1954. Subsequently to these representations plaintiffs to wit: on June 9, 1954, entered into a written contract for construction and purchase of the house and lot from defendants. The testimony indicates that as early as the first part of May, 1954 the defendants were negotiating to sell the service station lot to third persons, the successful conclusion of which depended upon whether the purchasers could lease said property to the Texas company. Other evidence bearing upon this matter is that pursuant to these negotiations defendants thereafter on June 15, 1954, only six days after the execution of the contract of purchase with plaintiffs, conveyed by deed the service station lot to the person with whom they had been negotiating for its sale.

In the case of Law v. Sidney, 47 Ariz. 1, 53 P.2d 64, we said that the circumstances and conduct of the promisor has an important bearing in the determination of what the promisor's intention was when he made the promise. In the present case we believe the inference is clear that defendants divested themselves of control of the service station lot prior to the time the representations claimed by plaintiffs to be false were made to them. This inference is strengthened by the fact that within six days after conveying the lot to plaintiffs defendants conveyed the service station lot to the purchaser without incorporating in the deed restrictions in conformity with the representations made to plaintiffs. These two circumstances considered together, we believe, are sufficient evidence to support a finding by the court that defendants made said representations with the intent then formed to not perform them. This being true said representations constitute actionable fraud. The further fact that plaintiffs' agent represented as an existing fact that Texaco had already drawn the service station plans and were all for it when considered in connection with all of the other evidence, seems to us to make the representations actionable fraud. We find no merit in the first assignment.

■■ The written contract dated June 9, 1954, entered into by plaintiffs and defendants contains a provision that it covers all agreements expressed or implied between the parties. Defendants urge as an assignment of error that when parties have integrated their agreement into a written contract, parol evidence is not admissible to vary the terms of the integrated writing. In answer to this assignment of error it is sufficient to say that the law has long been settled that whereas evidence of prior or contemporaneous oral agreements and negotiations is inadmissible, to vary terms of a written contract, nevertheless parol evidence is admissible to show fraud in the inducement of said contract. Pioneer Constructors v. Symes, 77 Ariz. 107, 267 P.2d 740, 41 A.L.R.2d 668. As a further answer to the above argument it is also a well-settled rule that a person can not free himself from fraud by incorporating a clause like the one above in a contract. Lutfy v. R. D. Roper & Sons Motor Co. 57 Ariz. 495, 115 P.2d 161.

■■ In their third assignment of error defendants contend that the judgment is not supported by the evidence because any evidence of alleged damages was speculative and conjectural. Therefore on this assignment of error the only questions for our consideration are: (1) In view of the evidence, did damage result as a consequence of defendants' wrongful act? (2) Did the evidence prove the extent of damages with reasonable certainty? In answering these two questions we will consider the evidence in a light most favorable to sustaining the

judgment of the lower court. Sturges v. Tongeland, 83 Ariz. 148, 317 P.2d 941.

The answer to the first question is yes. Plaintiffs, in order to prove damage called as an expert witness on real estate, Mr. Ben Shein. He was asked this question:

"Mr. Shein, assuming that location and that upon the contiguous lot immediately to the north of this 5465 East Sixth was to have been built an adobe service station similar to the residential sections in that area with an adobe fence intervening of some six foot in height, would the value of said property be greater or less in your opinion than an ordinary service station such as has been constructed there?"

His answer was:

"I'd say that the value of the house would then be more, * * *."

This disposes of the first question in favor of the plaintiffs.

Now with reference to the second question, we must take into consideration that the plaintiffs knew from the beginning that an adobe service station with a patio wall was going to be built on the lot adjoining their property. Therefore, the measure of damages that plaintiffs could recover would be the injury caused by a service station painted white and a barber and beauty shop being there instead of an adobe service station as represented with a patio wall. Has this amount of additional damages in dollars been proved with sufficient certainty to sustain the judgment herein?

In considering this question we have searched the transcript of record and exhibits for evidence to sustain the judgment of the trial court as to the extent of damage. From the evidence it appears that the plaintiffs purchased the house and lot for $15,030. Mr. Shein, expert witness for the plaintiffs, testified that the fair market value of plaintiffs' house "as it sits now" after having been injured is $13,000. The attorney for the plaintiffs next asked Mr. Shein:

"Now, how much of a deviation from your appraisal of $13,000.00, Mr. Shein, would account for a structure over there such as a rustic design service station out of burnt adobe and so forth?"

He answered:

"Mr. Wheeler, I am not sure I am qualified to go quite that far, frankly. Maybe better heads than mine. I am not sure I can do that."

Later Mr. Shein testified:

"If the Texaco service station were built of burnt adobe in my humble judgment I still would reduce the value of $15,000.00 somewhat. To what extent, that is asking—I would have to give it a lot more thought than to carve up the

$2,000.00 and then make a figure in an offhand statement. I feel that a house which abuts a business area has suffered to some extent already by the fact of that abutment."

The above testimony from plaintiffs' own witness is not sufficient to prove the extent of damage with reasonable certainty. In fact the above testimony is of very little aid in proving the extent of damage suffered by plaintiffs.

The plaintiffs contend that there is evidence as to the cost of construction of an adobe patio wall and therefore plaintiffs' damage could be based on this.

*Assuming* without deciding that the cost of constructing a patio wall on the service station lot is in part a measure of plaintiffs' damages, there is still not sufficient evidence to sustain the judgment in the amount of $1,500. The measurement of plaintiffs' lot where it borders the service station lot is 85 feet. The testimony is to the effect that the cost of constructing a patio wall six feet high is $6.25 a running foot or a total of $531.25. This is not the measure of damages nor would it be sufficient to sustain a judgment in the amount of $1,500.

Judgment reversed and remanded for a new trial on the question of damages only.

UDALL, C. J., and WINDES, STRUCKMEYER, and JOHNSON, JJ., concurring.