544 P.2d 694

Arthur G. BARNES, and Soleng Realty and Trust Co., a corporation, Appellants,

**v.**

Ernesto I. LOPEZ and Yolanda C. Lopez, husband and wife, Appellees.

Arthur G. BARNES, Appellant,

**v.**

SOLENG REALTY AND TRUST CO., a corporation, Appellee.

No. 2 CA–CIV 1795.

Court of Appeals of Arizona,
Division 2.

Jan. 14, 1976.

Rehearing Denied March 1, 1976.

Review Denied March 23, 1976.

J. C. Padilla, Tucson, for appellant Barnes.

Johnson, Hayes & Dowdall, Ltd., by Richard J. Dowdall, Tucson, for appellant and appellee Soleng Realty and Trust Co.

Jerome S. Sonenblick and Miller, Pitt & Feldman, P. C., by James R. Figliulo, Tucson, for appellees Ernesto I. Lopez and Yolanda C. Lopez.

## OPINION

KRUCKER, Judge.

Appellants, hereinafter referred to as Barnes and Soleng, were defendants in a suit instituted by appellees, hereinafter referred to as Lopez, for damages for fraud arising out of a real estate transaction. The case was tried to a jury, which returned a verdict in favor of Lopez against Soleng and Barnes in the amount of $16,600.00. The cross-claims ·of each de-

fendant against the other were tried to the court and judgment was rendered in favor of Soleng against Barnes in the amount of $16,600, plus attorneys' fees in the sum of $3,000.00. (The fees incurred in defending the lawsuit.)

The basis of Lopez' claim was a misrepresentation as to the zoning on the parcel of property purchased from Barnes through the Soleng office. According to him, the property was represented as being zoned B–2A (business) by Cajero, a Soleng salesman,[1] when in fact only part of the property was zoned B–2A and the remainder was zoned R–2 (residential).

A brief summary of the evidence is as follows. On June 21, 1972, Barnes executed an exclusive listing agreement with Soleng, through Cajero, which described the property as being approximately 666.1 feet by 610 feet and as being zoned B–2A. The asking price was $85,000.00.

Shortly thereafter, Cajero told Lopez that the entire parcel was zoned B–2A and that Lopez could "build any kind of a business that you want on that property." Barnes, however, testified that he had informed Cajero as to the split zoning and had directed him to prepare the listing agreement accordingly. Barnes admitted he signed the listing agreement without reading it carefully.

On July 7, 1972, Lopez signed a deposit receipt and agreement offering to purchase the subject parcel for $74,000 on specified terms. The offer was accepted by Barnes who signed the deposit receipt and agreement on July 18, 1972. The deposit receipt and agreement contained the following printed recitals:

" . . . subject only to: all covenants, reservations, conditions and restrictions of record and utility easements; ordinances regulating the use and occupancy of said property. . . .

\* \* \* \* \* \*

The purchaser and seller herein agree that there were no promises, inducements, representations or agreements in connection with this agreement, except those specifically set forth in writing.

\* \* \* \* \* \*

The undersigned purchaser hereby agrees to purchase the above described property at the price and under the terms and conditions herein set forth. He has verified before signing that any and all representations made by agent regarding the nature of the property, its financing, or its neighborhood have been reduced to writing herein, in full or by specific reference."

On July 26, 1972, a contract for the sale of real estate was executed by Barnes and Lopez which contained, *inter alia*, the following provision:

"Seller agrees to furnish buyer with a policy of title insurance insuring said buyer as vendee under this contract and to make, execute and acknowledge forthwith a deed conveying said property to buyer, free and clear of all encumbrances as of the date of this contract except as herein provided and subject to any restrictions of record, reservations in State or Federal Patents, and zoning ordinances of any municipality or county, and to deliver said deed and a copy of this agreement to said escrow agent.

\* \* \* \* \* \*

Buyer hereby acknowledges that buyer has examined said deed and preliminary report for title insurance or has caused the same to be examined by buyer's attorney and from such examination has found the title to said property satisfactory, and hereby agrees that when buyer has performed or complied with all the terms and conditions herein and is entitled to receive said deed, buyer will accept said deed and the title to said property as the same is shown by said policy of title insurance."

---

1. At the time of trial, Cajero was deceased.

Lopez testified that some time between July 7 and July 18, Barnes told him that "this is the only piece of property zoned B–2A that is left around that area." Lopez also testified that there had been a Soleng Realty "For Sale" sign on the property which indicated B–2A zoning. Cajero's employment by Soleng as a real estate salesman at all the material times is undisputed.

Barnes has appealed challenging both the judgment in favor of Lopez against him and the judgment in favor of Soleng on its cross-claim for indemnity against Barnes. Soleng has also appealed, attacking the judgment in favor of Lopez against Soleng. We shall first consider the respective parties' contentions with respect to the Lopez judgment and then the judgment on Soleng's cross-claim.

The gravamen of the Lopez claim against both Barnes and Soleng was that the subject property had been falsely represented as being zoned B–2A in its entirety when in fact it was not; that such misrepresentations were made by Barnes and Cajero as agent of Soleng knowing them to be false and with the intention that Lopez act upon them; that Lopez relied on the representations and had a right to so rely and was thereby induced to enter into the agreement to purchase the property.

■ We find no merit in appellants' invocation of the parol evidence rule since parol evidence is always admissible to show fraud in the inducement of a contract. *Lusk Corporation v. Burgess*, 85 Ariz. 90, 332 P.2d 493 (1958); *Dowdle v. Young*, 1 Ariz.App. 255, 401 P.2d 740 (1965). The fact that the deposit receipt agreement and land sale contract contained a merger provision did not bar proof of fraud in the inducement. *Lusk Corporation v. Burgess*, supra; *Jamison v. Southern States Life Insurance Company*, 3 Ariz.App. 131, 412 P.2d 306 (1966).

■ Both appellants place a great deal of emphasis on the fact that the documents executed by Lopez recited that the purchase was made "subject to existing zoning ordinances." Their reliance on *Apolito v. Johnson*, 3 Ariz.App. 232, 413 P.2d 291, modified on denial of rehearing, 3 Ariz. App. 358, 414 P.2d 442 (1966) is misplaced. In *Apolito* the representations attributed to the vendor were contradictory to the provisions of the written agreement signed by the purchasers and consequently we held them inadmissible under the parol evidence rule. In the instant case, however, a representation that the property was zoned B–2A in its entirety was not contradictory to the terms of the written agreement.

■■ We likewise find no merit in the claim that the representation as to the zoning of the property was not actionable. It is true that a misrepresentation of law or of the legal effect of a contract does not constitute actionable fraud. *Apolito v. Johnson*, supra. The representation as to the B–2A zoning was a representation as to an existing fact, hence actionable.

■ Appellants also contend that the requisite element of "right to rely" on the representation was lacking since Lopez could have, by proper inquiry, ascertained the correct zoning. Where, as here, a positive, distinct and definite representation as to the zoning status of the property was made, Lopez was entitled to rely on it and had no duty to make further inquiry. *Carrel v. Lux*, 101 Ariz. 430, 420 P.2d 564 (1966); *Reese v. Cradit*, 12 Ariz.App. 233, 469 P.2d 467 (1970). This is true even though the facts could be ascertained by an inspection of public records. *Regus v. Schartkoff*, 156 Cal.App.2d 382, 319 P.2d 721 (1957); *Petersen v. Graham*, 7 Wash. 2d 464, 110 P.2d 149 (1941).

■ Appellant Barnes maintains that Lopez, before maintaining an action for damages, was required to make Barnes an offer to rescind. It is true that in a broker-negotiated sale, where the misrepresentation is by the broker, the property owner is bound by the broker's misrepresentations only when he was expressly authorized to make such representations or when the

owner, after notice of the fraud, insists upon holding the purchaser to his bargain, thereby ratifying the alleged representations of the broker. *Jerger v. Rubin,* 106 Ariz. 114, 471 P.2d 726 (1970); *Light v. Chandler Improvement Co.,* 33 Ariz. 101, 261 P. 969 (1928). The listing agreement signed by Barnes, represented the property as being zoned B–2A. He therefore cannot be heard to say that the representation was unknown to him.

Soleng contends that Lopez' recovery should have been barred because of his failure to mitigate damages, stating in its brief:

"The simplest course of action for Lopez to have pursued upon learning that the entire parcel was not zoned B–2A would have been for him to have attempted to have the zoning changed. Had he done this, Lopez could have avoided all of the damages which he claimed in his suit. Because he did not do so, Lopez is barred from recovery."

█ The doctrine of avoidable consequences precludes recovery from losses the plaintiff could have avoided by *reasonable* conduct on his part. *Fulton v. Woodford,* 17 Ariz.App. 490, 498 P.2d 564 (1972). One claiming the benefit of the doctrine has the burden of proving that mitigation was probable. *Dinwiddie Construction Company v. Campbell,* 81 Nev. 469, 406 P.2d 294 (1965); *Kelty v. Best Cabs Inc.,* 206 Kan. 654, 481 P.2d 980 (1971); *Pearson v. Sigmund,* 263 Ore. 626, 503 P.2d 702 (1972). In order to submit the issue to the jury, there must be competent evidence to show that the plaintiff failed to take reasonable efforts to mitigate his damages. *Powell v. Brady,* 30 Colo.App. 406, 496 P.2d 328 (1972), *aff'd sub nom. Brady v. City and County of Denver,* 181 Colo. 218, 508 P.2d 1254 (1973). The only evidence presented here was that Lopez made no attempt to obtain rezoning. There was no evidence that an application for rezoning would have been granted. Under these circumstances, the

mere fact that Lopez did not attempt to obtain rezoning was no defense. *See, Farnsworth v. Feller,* 256 Ore. 56, 471 P.2d 792 (1970).

█ Soleng claims that it cannot be held liable for Cajero's alleged misrepresentation. We do not agree. The jury concluded that Cajero was guilty of fraud. At the time the fraud was committed, Cajero was acting within the scope of his employment, thus the doctrine of respondeat superior applied. *Scottsdale Jaycees v. Superior Court,* 17 Ariz.App. 571, 499 P.2d 185 (1972); *Transamerica Insurance Company v. Valley National Bank,* 11 Ariz. App. 121, 462 P.2d 814 (1969).

█ Barnes claims the evidence does not support the award of $16,600 in damages. The trial court instructed the jury on the "benefit of the bargain" measure of damages, which was appropriate. *Carrel v. Lux,* supra. An expert witness for Lopez testified that in his opinion the subject property had a value of $60,500 on the date of purchase and that, had it been zoned B–2A as represented, the value would have been $80,600.00. Thus we see that Barnes' claim of lack of evidentiary support for the damages award is without merit. The fact that the jury concluded that the difference in value should be only $16,600 rather than $20,100, as testified by the witness, does not render the verdict speculative.

█ The final issue raised by Barnes is the propriety of allowing Soleng to recover on its cross-claim. The trial court found that Soleng was entitled to indemnity by reason of the written listing agreement, the pertinent provision of which recites:

"I or we specifically make the foregoing listing data, together with remarks set forth therein, a part of this listing agreement, and we hereby authorize you to represent the property described in this listing as set forth in said listing data together with the said remarks. In the event that any broker or xxx of

Tucson, Inc., *shall be liable* or shall suffer loss or liability by reason in whole *or in part of any incorrect statements in the above listing date [sic] or remarks,* I or we do hereby agree to indemnify such broker xxx to the full extent of such loss or liability if any together with all costs and expenses of defense of any claim in connection therwith [sic] asserted to such broker xxx." (Emphasis added)

The jury's verdict in favor of Lopez against Soleng was predicated upon its having found that Cajero had fraudulently induced Lopez to purchase the property while acting within the scope of his employment and authority. The indemnity agreement provided only for "loss or liability by reason . . . of any incorrect statements" in the listing data. It did not cover losses or liabilities incurred by reason of the wrongdoing, as found by the jury, of Soleng's agent. When an indemnity agreement does not express in clear and unequivocal terms an intention to compensate the indemnitee for losses occasioned by its own wrong, it is not so construed. *Southern Pacific Company v. Gila River Ranch, Inc.,* 105 Ariz. 107, 460 P.2d 1 (1969); *Royal Properties, Inc. v. Arizona Title Insurance and Trust Co.,* 13 Ariz. App. 376, 476 P.2d 897 (1971). Since indemnity agreements are construed to cover only those losses or liabilities which reasonably appear to have been intended by the parties, *Herman Chanen Const. Co., Inc. v. Guy Apple Masonry Contractors, Inc.,* 9 Ariz.App. 445, 453 P.2d 541 (1969), Soleng was not entitled to indemnification from Barnes. Recovery on its cross-claim should therefore have not been granted.

The judgment in favor of Lopez against Barnes and Soleng is affirmed and the judgment in favor of Soleng against Barnes is reversed.

HATHAWAY, J., and JACK G. MARKS, Superior Court Judge, Pima County, concur.

Judge LAWRENCE HOWARD having requested that he be relieved from consideration of this matter, Judge JACK G. MARKS was called to sit in his stead and participate in the determination of this decision.