744 P.2d 22

Nick C. **FORMENTO** and Barbara A. Formento, husband and wife, Plaintiffs/Appellants,

v.

ENÇANTO BUSINESS PARK, a Joint Venture, Emkay Development Company, Inc., a Nevada corporation, and Atlas Realty Company, a Texas corporation, Defendants/Appellees.

No. 2 CA–CV 87–0022.

Court of Appeals of Arizona, Division 2, Department A.

July 22, 1987.

Supplemental Opinion Aug. 4, 1987.

Review Denied Oct. 27, 1987.

**496**

Mariscal, Weeks, McIntyre & Friedlander by Phillip Weeks and Brian M. Mueller, Phoenix, for plaintiffs/appellants.

Evans, Kitchel & Jenckes by Steven A. Hirsch, Phoenix, for defendants/appellees.

## OPINION

HOWARD, Presiding Judge.

This is an appeal from the granting of partial summary judgment in favor of defendants on the issues of negligent misrepresentation and breach of warranty, and from a directed verdict granted to defendants on the issue of intentional misrepresentation, all arising from defendants' sale of industrial property to plaintiffs. We affirm in part and reverse in part.

Encanto Business Park, a joint venture between Emkay Development Company and Atlas Realty Company (Encanto), sold a lot in a Phoenix industrial park (Lot 24) to Nick C. and Barbara A. Formento in November 1983. The lot was zoned IP (Industrial Park). This zoning classification normally allows a forty-foot building height. However, unknown to Formento, Lot 24 had a more restrictive height limitation of 18 feet, plus two additional feet for a parapet wall, and the use of the lot originally had been restricted to "1–story office complex." In 1979, the City of Phoenix, at the request of Encanto's attorney,

agreed to delete the "office complex" restriction but retained the one-story height limitation. The correspondence regarding this change was retained in the files of Emkay, which was the project developer on behalf of the joint venture. None of the Emkay employees involved in the 1979 zoning change was employed by Emkay at the time Formento entered into negotiations to purchase Lot 24.

The one-story height limitation is not noted on the city zoning map; an interested party must ask to review the zoning file for that lot at the planning and zoning office to learn of this restriction. However, there is nothing to alert an interested party that the file should be reviewed."[1] We find nothing in the record to support the conclusion that, had Formento made an independent inquiry as to the status of Lot 24, the height limitation would have been discovered. Indeed, Emkay admitted as much in its letter to the city in support of Formento's variance request after the transaction closed:

"This [height] stipulation was apparently never made a matter of public record. No reference to it appears on the recorded plat, nor has any document been recorded upon which interested parties could rely for notification."

The Covenants, Conditions and Restrictions (CC & Rs) do not set forth the one-story height limitation. Additionally, the marketing tools prepared by Emkay refer to the lot as being zoned IP. The only hint that Lot 24 is not a standard IP lot is a notation on an "Advertisement" prepared by Emkay to market the property which states "One Story Office Complex."

Formento testified that, during the course of negotiations between Formento and Encanto and prior to the parties' entering into the agreement, he told several people of his intention to build a two-story building. He further testified that David Dixon, a salesman for Coldwell Banker, was aware of his intention, as were Kurt

---

1. The City of Phoenix currently uses a system where an asterisk is placed on a lot on the zoning map if that lot contains a special restriction that differs from the zoning classification stated. This system was not in use at the time the height limitation was placed on Lot 24.

Waltz, area manager for Emkay, and Joel Ross, Emkay's project manager.

The "Agreement to Purchase and Sell Real Property and Escrow Instructions for Lot 24", entered into by Formento and Encanto, contained the following language:

"1. *Condition of Title at Closing.*

At the close of Escrow as hereinafter determined, Seller [Encanto] will deliver title to the Subject Property [Lot 24] *subject only to:*

(a) *Existing zoning,* matters which would be shown by physical inspection of the property and general and special taxes and assessments for the then current fiscal year.

. . . .

10. *Miscellaneous.*

(h) *This Agreement* supersedes any prior agreement, and *contains the entire agreement of the parties* concerning the transaction described herein. *No other agreement, statement, representation or promise made by any party, or to any employee, officer or agent of any party that is not in writing and signed by all parties to this Agreement shall be of any effect.*

. . . .

11. *Addenda.*

Notwithstanding anything in this Agreement to the contrary:

(a) *Buyer [Formento] acknowledges* that Buyer has examined the Subject Property; *that Buyer is not relying upon any representations or statements of Seller or the broker(s) in connection with the Subject Property, its zoning, its fitness for any particular use or purpose,* availability of water or utilities, soil conditions, encroachments which would be disclosed by either inspection of the Subject Property or a survey, flooding *and such other matters as might be disclosed or determined by an examination of the Subject Property and independent inquiry with respect thereto."* (Emphasis added.)

Additionally, the CC & Rs stated, in part:

"Setbacks, site coverage and *heights of buildings and other improvements shall conform to the requirements of these Restrictions, and with the rules, regulations, codes, ordinances and laws of any governmental agency having jurisdiction over the Property."* (Emphasis added.)

Formento read both documents carefully, and found no reference to the special height limitation on Lot 24.

After the transaction closed, Formento's architect presented building plans to the city for approval. The plans were rejected because the proposed building exceeded Lot 24's height limitation. This was the first time Formento had any knowledge of the more restrictive limits for Lot 24. Formento then requested a variance from the city and was assisted in his effort by Emkay. Emkay's letter to the city stated in part:

"This letter is to provide you with background information relating to the request of Mr. Nick Formento to modify the 20' height stipulation for a portion of Lot 24 at Encanto Business Park, and to lend our support to his effort.

\*     \*     \*     \*     \*     \*

This stipulation was apparently never made a matter of public record. No reference to it appears on the recorded plat, nor has any document been recorded upon which interested parties could rely for notification. Neither current Emkay management nor any of the other parties involved in the recent sale of the subject property had knowledge of the height limitation. The last Emkay involvement was through Larry Sinagoga (no longer with Emkay) in August 1979 when a request was filed with Mr. Richard Counts, Planning Director of the City of Phoenix, to modify the 'one-story office complex' stipulation to 'garden office warehouse'. This modification was approved by the City Council on October 29, 1979, Rezoning Application No. 154–

73, and Emkay was notified by letter dated February 7, 1980.

\* \* \* \* \* \*

We respectfully request that you grant his request for modification of the height stipulation."

Despite these efforts, the city denied the variance.

Formento then filed suit against the defendants alleging intentional misrepresentation, wanton, reckless and negligent misrepresentation, and breach of warranty. The defendants were granted partial summary judgment as to the negligent misrepresentation and warranty claims, based on their argument and the trial court's conclusion that the parol evidence rule precluded consideration of any evidence of representations or warranties outside the agreement. Before trial on the claim of intentional misrepresentation, the trial court ruled that Formento could only present evidence of affirmative representations made by defendants, because evidence relating to their failure to inform constituted fraudulent concealment, a separate cause of action not pled. Formento then moved to amend the pleadings, and the motion was denied. The defendants moved for a directed verdict at the close of Formento's case. The trial judge granted the motion, ruling that the provisions of the agreement precluded any right to rely by Formento. This appeal followed.

Formento raises numerous issues on appeal. We agree with Formento that the trial court erred in granting both the summary judgment on the issue of negligent misrepresentation and the directed verdict, and reverse as to those issues.

## ADMISSION OF HEARSAY

■ The trial court prevented Formento from testifying as to statements made to him by David Dixon, ruling that the statements were inadmissible hearsay. Formento argues that Dixon was an agent of Encanto because Coldwell Banker was the listing agent for the project, and therefore his statements should have been admitted as an exception to the hearsay rule under Rule 801(d)(2), Rules of Evidence, 17A

A.R.S. (admission by party-opponent). We do not agree. Although Coldwell Banker obtained the listing through Joe Porter, another agent in its office, Dixon was acting on Formento's behalf when he told Formento about the Encanto lot. Dixon had shown Formento other properties before he showed Lot 24 to him, he had presented offers to Encanto on Formento's behalf, and he was paid half the commission as the buyer's agent by Encanto. These facts indicate that Dixon was not Encanto's agent in this transaction. The trial court has great discretion in the admission or exclusion of evidence, and its ruling will not be disturbed on appeal absent a clear abuse of that discretion and prejudice to the other party. *Selby v. Savard*, 134 Ariz. 222, 655 P.2d 342 (1982). There was no error.

## MISREPRESENTATION

■ 1. *Parol Evidence Rule.* Formento next claims that the trial court erred in applying the parol evidence rule to exclude evidence of Encanto's alleged negligent misrepresentations and express warranties, made both before and after execution of the agreement. The parol evidence rule precludes admission of any understandings or representations made prior to or contemporaneously with the written contract if the contract was intended as a final and complete integration of the parties' agreement. *Pinnacle Peak Developers v. TRW Inv. Corp.*, 129 Ariz. 385, 631 P.2d 540 (App.1980).

Formento claims that *Hill v. Jones*, 151 Ariz. 81, 725 P.2d 1115 (App.1986) requires us to reverse the entry of summary judgment on the issue of negligent misrepresentation. *Hill* states that where the negligent misrepresentation is one of material fact, the parol evidence rule must give way to a judicial policy promoting honesty and fair dealing. According to Formento, that is the situation in the case at bar.

■ Negligent misrepresentation is a cause of action recognized in Arizona. *Van Buren v. Pima Community College Dist. Bd.*, 113 Ariz. 85, 546 P.2d 821 (1976).

This court has said that parol evidence is not admissible to prove a claim of negligent misrepresentation based upon statements made prior to the signing of the contract. *Kalil Bottling Co. v. Burroughs Corp.,* 127 Ariz. 278, 619 P.2d 1055 (App.1980). However, the parol evidence rule does not bar evidence of fraud in the inducement of a contract. *Lusk Corp. v. Burgess,* 85 Ariz. 90, 332 P.2d 493 (1958); *Arnold v. Cesare,* 137 Ariz. 48, 668 P.2d 891 (App. 1983). Further, it is well-settled that a party "can not free himself from fraud by incorporating [an integration clause] in a contract." *Lusk Corp. v. Burgess,* 85 Ariz. at 93, 332 P.2d at 495.

■ Formento claims that there is no logical reason to distinguish between negligent and fraudulent misrepresentations because, in both instances, the harm done to the party relying on the misrepresentations is the same. Their argument is based on *Hill v. Jones,* supra, a recent Division One case. In *Hill,* the issue was whether a seller has a duty to disclose to the buyer the existence of termite damage in a residential dwelling known to the seller, but not to the buyer, which materially affects the value of the property. The Hills had alleged that the sellers, the Joneses, made representations that what was actually termite damage in the residence was water damage, and had failed to disclose the existence of the termite damage and the history of the infestation in the residence. The trial court dismissed the misrepresentation claim based on an integration clause in the agreement between the parties. The appellate court reversed, holding that a duty to disclose did exist. The court stated:

> "Although the law of contracts supports the finality of transactions, over the years courts have recognized that under certain limited circumstances it is unjust to strictly enforce the policy favoring finality....
>
> There is also a judicial policy promoting honesty and fair dealing in business relationships. This policy is expressed in the

law of fraudulent and negligent misrepresentations. Where a misrepresentation is fraudulent or where a negligent misrepresentation is one of material fact, the policy of finality rightly gives way to the policy of promoting honest dealings between the parties. [citation omitted] [N]ondisclosure may be equated with and given the same legal effect as fraud and misrepresentation. One category of cases where this has been done involves the area of nondisclosure of material facts affecting the value of property, known to the seller but not reasonably capable of being known to the buyer.

> \* \* \* \* \* \*

> 'A matter is material if it is one to which a reasonable person would attach importance in determining his choice of action in the transaction in question.' [citation omitted]" 151 Ariz. at 84–86, 725 P.2d at 1118–20.

The *Hill* court recognized that a seller should not be allowed to hide behind an integration clause to avoid the consequences of a misrepresentation, whether fraudulent or negligent. We agree. Formento is entitled to a trial on the merits of the issue of negligent misrepresentation, and the parol evidence rule cannot be used by Encanto as a shield against its own representations.

■ We are also able to reach the same conclusion using a different analysis. The parol evidence rule is a rule of substantive contract law, *Rental Development Corp. of America v. Rubenstein Const. Co.,* 96 Ariz. 133, 393 P.2d 144 (1964); see also *Fiorentino v. Travelers Insurance Company,* 448 F.Supp. 1364 (E.D.Pa.1978), and a claim of negligent misrepresentation sounds in tort. Therefore, as stated in *Van Buren v. Pima Community College Dist. Bd.,* supra, a claim for negligent misrepresentation is governed by the law of negligence, 113 Ariz. at 87, 546 P.2d at 823, and the parol evidence rule is inapplicable.

Arizona has adopted § 552 of the Restatement (Second) of Torts (1977).[2] *Don-*

---

**2.** "§ 552. Information Negligently Supplied for the Guidance of Others

(1) One who, in the course of his business, profession or employment, or in any other

*nelly Const. Co. v. Oberg/Hunt/Gilleland,* 139 Ariz. 184, 677 P.2d 1292 (1984); see also *Brown v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 197 Mont. 1, 640 P.2d 453 (1982). Other jurisdictions that recognize an action for the tort of negligent misrepresentation have admitted parol evidence to prove the claim. See, e.g., *Nashua Trust Co. v. Weisman,* 122 N.H. 397, 445 A.2d 1101 (1982); *APLications, Inc. v. Hewitt-Packard Co.,* 501 F.Supp. 129 (S.D.N.Y.1980), aff'd, 672 F.2d 1076 (1982); *National Bldg. Leasing, Inc. v. Byler,* 252 Pa.Super. 370, 381 A.2d 963 (1977); *Haynes v. Cumberland Builders, Inc.,* 546 S.W.2d 228 (Tenn.App.1976); but see, *Wilkinson v. Carpenter,* 276 Or. 311, 554 P.2d 512 (1976).

It is undisputed that the information pertaining to the height restriction was in Encanto's file and was not conveyed to Formento. Section 552 may therefore provide a basis for Encanto's liability, if Formento can prove the misrepresentations. Formento is entitled to present evidence to prove the misrepresentations made and the reliance thereon. See *Moffatt Enterprises, Inc. v. Borden Inc.,* 807 F.2d 1169 (3d Cir.1986); *Brown v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* supra.

Summary judgment in favor of Encanto on this issue was granted in error.

■ 2. *Right to rely.* The Formentos cite *Barnes v. Lopez,* 25 Ariz.App. 477, 544 P.2d 694 (1976), in support of their argument that they had a right to rely on Encanto's alleged misrepresentations. In *Barnes,* the seller represented to the buyer, both orally and in the written listing agreement, that the subject property was zoned B–2A, when in fact he knew that

only a portion of the property was within that zoning classification. This court held that the buyer had a right to rely on the seller's representations, even though the buyer could have ascertained the correct zoning by his own inquiry. *Id.* at 480, 544 P.2d at 697.

There is no difference between this case and *Barnes* on the reliance issue. In each case, there was a clause in the agreement stating that the buyers were not relying on any representation made by the seller, other than those contained in the agreement. The *Barnes* agreement contained a clause stating that the property was being sold subject to existing ordinances regulating the use of the property; the agreement here stated that the property was being sold subject to existing zoning.

The trial court held that Formento could not rely on any representations made by Encanto because the contract expressly stated that Formento

"is not relying upon any representations or statements of Seller or the broker(s) in connection with the Subject Property, its zoning, its fitness for any particular use . or purpose ... and such other matters as might be disclosed or determined by an examination of the Subject Property and independent inquiry with respect thereto."

In *Barnes,* we rejected this exact position, stating that when a "positive, distinct and definite representation" regarding the zoning status of the property is made, the buyer is entitled to rely on that representation with no duty to make independent inquiry. 25 Ariz.App. at 480, 544 P.2d at 697. Here, Encanto's representation that

transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he

intends to supply the information or knows that the recipient intends to supply it; and (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them."

the property had industrial park zoning was such a representation.

■ 3. *Concealment.* It is true that Formento alleged fraudulent misrepresentation, not fraudulent concealment, in the pleadings. However, this is not fatal to their case. In *Madisons Chevrolet, Inc. v. Donald,* 109 Ariz. 100, 505 P.2d 1039 (1973), the supreme court was faced with a similar situation. In that case, an automobile dealership represented to a buyer that a car was a "new executive demonstrator," when in fact the car had been in an accident involving extensive damage. The dealership knew of the accident, yet did not tell the buyer. When the buyer was made aware of the earlier damage to the car, she sued the dealership for fraudulent mispresentation and recovered both actual and punitive damages. On appeal, the dealership argued that at most, the buyer had a claim for fraudulent concealment, a theory neither pled nor proved. The court rejected this argument, stating that the failure to disclose did support an action for fraudulent misrepresentation.

■ The distinction between fraudulent, affirmative misrepresentation and fraudulent concealment is often a distinction without a difference. See, e.g., *State v. Coddington,* 135 Ariz. 480, 481, 662 P.2d 155, 156 (App.1983) ("Where failure to disclose a material fact is calculated to induce a false belief, the distinction between concealment and affirmative misrepresentation is tenuous."); *Madisons Chevrolet, Inc. v. Donald,* supra. Encanto, through its marketing materials, clearly represented the property as being zoned IP. This was a correct, but not a complete, disclosure of the status of Lot 24. The Restatement (Second) of Torts § 529 (1977) addresses this situation:

"A representation stating the truth so far as it goes but which the maker knows or believes to be materially misleading because of his failure to state additional or qualifying matter is a fraudulent misrepresentation."

In this case, the trial court erred in not allowing the Formentos to present evidence of Encanto's failure to disclose the restrictive height limitation, because this non-disclosure is one aspect of the misrepresentation.

## WARRANTY

■ The trial court granted summary judgment in favor of defendants on the issue of warranty. Formento asks this court to extend implied warranties to the sale of raw land. We decline to do so. While it is true that Arizona courts have imposed implied warranties upon builder-vendors in favor of residential buyers in new home construction, see *Columbia Western Corp. v. Vela,* 122 Ariz. 28, 592 P.2d 1294 (App.1979), we do not believe that imposing implied warranties on the seller of raw land is appropriate.

The summary judgment on the issue of negligent misrepresentation and the directed verdict on the issue of intentional misrepresentation are reversed and remanded for proceedings consistent with this opinion. The summary judgment on the issue of warranty is affirmed. Formento will be awarded attorney's fees on appeal as requested upon filing a statement of costs pursuant to Rule 21(c), Rules of Civil Appellate Procedure, 17A A.R.S.

FERNANDEZ and HATHAWAY, JJ., concur.

## SUPPLEMENTAL OPINION

HOWARD, Presiding Judge.

Appellees have asked us to reconsider our award of attorneys' fees on appeal to the appellants. We grant their motion. The contract upon which this appeal is based states:

"If any party shall bring an action against another party arising out of this Agreement, then the party in whose favor final judgment shall be entered, shall be entitled to have and recover from the other party its reasonable attorneys' fees and other reasonable expenses in connection with such action of proceeding, in addition to its recoverable court costs."

This contract, and not A.R.S § 12–341.01, governs the award of attorneys' fees on

appeal. *Connor v. Cal-Az Properties, Inc.*, 137 Ariz. 53, 668 P.2d 896 (App.1983). According to the contract, appellants have to be awarded a final judgment in their favor before they can recover attorneys' fees incurred in this appeal. Since the condition has not yet occurred, the award of such fees must abide the outcome of the proceedings in the trial court.

FERNANDEZ and HATHAWAY, JJ., concur.