Sound Techniques, Inc. *vs.* Barry D. Hoffman, trustee.[1]

No. 98-P-1316.

Suffolk. January 18, 2000. - November 3, 2000.

Present: Perretta, Kass, & Lenk, JJ.

*Contract,* Lease of real estate, Merger, Misrepresentation. *Evidence,* Parol evidence. *Negligence,* Contractual limitation of liability.

The defendant in a negligent misrepresentation claim arising from a lease agreement sufficiently preserved his right to appellate review of the question whether certain testimony was inadmissible parol evidence. [427-429]

Discussion of cases considering whether, in commercial transactions, a merger clause in a contract protects the contracting party against claims of negligent misrepresentation. [431-432]

An unambiguous merger clause in a lease agreement, in which the tenant disclaimed reliance on any warranties or representations not set forth in the lease, operated, in the circumstances, to bar, under the parol evidence rule, extrinsic evidence of asserted negligent representations by the lessor's agent. [429-431, 432-434]

Civil action commenced in the Superior Court Department on August 5, 1992.

The case was tried before *Peter M. Lauriat,* J.

*Charles K. Mone* (*Leonard B. Zide* with him) for the defendant.

*Evan Slavitt* for the plaintiff.

Perretta, J. In *Bates* v. *Southgate,* 308 Mass. 170, 182 (1941), the court held that "contracts or clauses attempting to protect a party against the consequences of his own fraud are against public policy and void where fraud inducing the contract is shown . . . ." This appeal brings before us the question whether *Bates* applies with equal force when a party enters into a contract containing such a clause, commonly referred to as a merger clause, an integration clause, or an exculpatory clause,

[1] Of the 1260 Boylston Street Realty Trust.

in reliance upon a negligent rather than deliberate misrepresentation. In this case, the lessee, Sound Techniques, Inc. (Sound), brought an action against the lessor, Barry Hoffman, alleging that, prior to the execution of the lease, Hoffman (through his real estate agent) made certain false representations concerning the expected noise level at the leased premises. The jury rejected Sound's claims for breach of contract and deceit but awarded damages on the count for negligent misrepresentation. On Hoffman's appeal, we conclude that the merger clause set out in the lease was enforceable and precluded Sound from recovering damages on the basis of its allegations of a negligent misrepresentation. We reverse the judgment.

1. *The facts.* There was evidence to show that in 1989, Sound, the operator of a professional sound recording studio, was seeking to lease commercial space in Boston. Michael McGloin, an employee of Hoffman's leasing agent, showed James Anderson, Sound's president, vacant space on the second floor of a building owned by Hoffman and located at 1260 Boylston Street. The first floor of the building was occupied by Boston Ramrod (Ramrod), a bar owned by Saturday Afternoon, Inc.[2] McGloin showed the premises to Anderson several times. On all these occasions, Anderson made it clear that Sound was seeking space for purposes of building a state-of-the-art recording studio. Noticing that Ramrod was doing expansion work, Anderson asked McGloin about the extent of the planned expansion. Mc-Gloin told Anderson that he need not worry and that Ramrod was expanding its dining area in which only background music would be provided. He assured Anderson that the space in question would accommodate Sound's needs.

At the time of the signing of the lease, October 10, 1989, Sound was represented by counsel who had assisted in the lease negotiations and had reviewed the terms of the lease prior to its execution. The lease was conditioned upon Sound successfully completing an acoustical inspection of the premises before October 13, 1989. Prior to the signing of the lease, no one from Sound had walked through Ramrod on a weekend night to determine the noise level. Sound's acoustical engineer conducted a brief visual inspection of Ramrod during a weekday afternoon and concluded that the second-floor space was suitable for Sound's purposes. Although Sound's studio operates

---

[2]Although Saturday Afternoon, Inc., was a defendant at trial, it is not involved in this appeal.

around the clock, seven days a week, the engineer did not visit the Ramrod late at night or during the weekend, did not measure the ambient sound level, and did not talk with anyone at Ramrod about the operation of its sound system.

Soon after relocating to the premises in issue, Sound began to experience problems with noise coming from Ramrod, and Sound discovered that, contrary to McGloin's representations, Ramrod's expansion went beyond providing background music in the dining area. Rather, Ramrod had upgraded its sound system and had expanded its premises to include a dance floor. There were times, Sound claimed, when the whole building throbbed; sessions in its recording studio were disrupted and Sound was losing business. Sound then brought an action against Hoffman, claiming breach of contract, deceit, and negligent misrepresentation and alleging that McGloin's statements to Anderson regarding the limited nature of Ramrod's expansion plans induced it to enter into the lease.[3] Although the jury found in Hoffman's favor on Sound's claims of breach of contract and deceit, they found in Sound's favor on its claim for negligent misrepresentation.

But for Anderson's testimony relating McGloin's statements concerning Ramrod's expansion plans, Sound could not have sustained its burden of proof on its claim for negligent misrepresentation. The question before us is whether Anderson's testimony was inadmissible by reason of the clause in the lease entitled "Waiver by landlord; representations," which, in pertinent part, reads:

> "Tenant acknowledges that Tenant has not been influenced to enter into this transaction nor has Tenant relied upon any warranties or representations not set forth in this instrument."

2. *Hoffman's right to appellate review.* Sound claims that, because Hoffman failed to preserve his right to appellate review on the question whether the merger clause in the lease precluded Sound from recovering damages on account of McGloin's negligent misrepresentation, we need not consider the issue and, instead, should simply affirm the judgment.

At trial, Sound attempted to introduce evidence through Anderson of McGloin's statements concerning Ramrod's expan-

---

[3]Sound also brought claims against Hoffman's leasing agent, The Codman Company, Inc. Those claims are not before us.

sion plans. Hoffman objected to the proffered testimony on the basis of the lease's merger clause and the parol evidence rule. Sound claims that Hoffman withdrew his original objection to Anderson's testimony and, thereafter, failed to object properly to that evidence. To support its claim, Sound refers to various snippets of the trial transcript as well as to the judge's memorandum of decision on the parties' postjudgment motions.

The transcript shows that, when Anderson was first asked about McGloin's statements, Hoffman objected on the ground that the merger clause precluded evidence about whether Sound was induced to enter into the lease by any representations other than those recited in the lease. After the objection was sustained, Sound submitted a memorandum of law, and Hoffman withdrew his objection to the testimony as it pertained to Sound's claim of deceit. However, he maintained his objection to the admissibility of the testimony to the extent it purported to bear on the claim for negligent misrepresentation.[4] When Anderson was asked to relate McGloin's statements, Hoffman again objected and requested a limiting instruction. The judge denied the requested instruction but stated that Hoffman could renew his request for a limiting instruction at the end of the case.[5] Based upon the merger clause set out in the lease, Hoffman requested a directed verdict at the close of Sound's evidence and, again, at the close of the evidence. After the judge's final instructions, Hoffman again asked that the jury be instructed that extrinsic evidence could not be considered on Sound's claim for negligent misrepresentation.

When the jury found in Sound's favor on its claim for negligent misrepresentation, Hoffman filed a motion for judgment notwithstanding the verdict. In his memorandum of decision on that motion, the judge wrote that it was his recollection that Hoffman had withdrawn his objection to McGloin's testimony concerning Ramrod's expansion plans. Consequently, he denied Hoffman's motion without reaching the question

---

[4]Specifically, Hoffman's counsel stated: "[A]t least as to the deceit clause, I will have to withdraw my objection to it. I believe the merger clause would still apply to the negligent misrepresentation [claim], but as to the deceit claim, I am going to have to withdraw my objection to it."

[5]The judge explained: "I am going to let the testimony come in now, but I will certainly entertain an instruction at the end of the case in connection with a reference to some kind of particular reference that may have been given as to what it may or may not be considered for. I can break it down by count at that point, depending on what counts we have left. . . ."

whether McGloin's testimony was admissible on Sound's negligent misrepresentation claim.

We think Hoffman did all that he could to protect his right to appellate review of the questions whether Anderson's testimony concerning McGloin's statements was inadmissible under the parol evidence rule and whether Sound's claim for negligent misrepresentation was barred by the merger clause set out in the lease. See *Frick Co.* v. *New England Insulation Co.*, 347 Mass. 461, 467 (1964). Cf. *Abraham* v. *Woburn*, 383 Mass. 724, 727 n.1 (1981) ("The purpose of requiring an objection is to afford the trial judge an opportunity to act promptly to remove from the jury's consideration evidence which has no place in the trial").

3. *The parol evidence rule.* "The rule that written agreements may not be varied or added to by parol evidence of antecedent or contemporaneous negotiations is not one merely of evidence, but is a rule of substantive law. *Goldenberg* v. *Taglino*, 218 Mass. 357, 359 [1914]. *Goldband* v. *Commissioner of Banks*, 245 Mass. 143, 150 [1923]. Before that rule comes into operation, however, the court must be sure that it has before it a written contract intended by the parties as a statement of their complete agreement. *Welch* v. *Bombardieri*, 252 Mass. 84, 87 [1925]." *Kesslen Shoe Co.* v. *Philadelphia Fire & Marine Ins. Co.*, 295 Mass. 123, 129 (1936). See *Scirpo* v. *McMillan*, 355 Mass. 657, 661 (1969). Sound does not contend that the merger clause is ambiguous in its terms or that it was itself obtained by fraud. Moreover, there is nothing in the record appendix that suggests that the lease was other than a fully integrated contract. See *Gregory* v. *Raytheon Serv. Co.*, 27 Mass. App. Ct. 1170, 1171 (1989).

4. *Enforceability of the merger clause.* Whether we refer to the clause in question as a merger clause, an integration clause, or an exculpatory clause, the settled rule of law is that a contracting party cannot rely upon such a clause as protection against claims based upon fraud or deceit. See *Bates* v. *Southgate*, 308 Mass. at 182-183; *McEvoy Travel Bureau, Inc.* v. *Norton Co.*, 408 Mass. 704, 712-713 (1990); *Sheehy* v. *Lipton Indus.*, 24 Mass. App. Ct. 188, 193 (1987). This established rule is an exception to the basic principles concerning the freedom to contract and is grounded upon public policy concerns. As explained in *Bates* v. *Southgate*, 308 Mass. at 182:

"As a matter of principle it is necessary to weigh the

advantages of certainty in contractual relations against the harm and injustice that result from fraud. In obedience to the demands of a larger public policy the law long ago abandoned the position that a contract must be held sacred regardless of the fraud of one of the parties in procuring it. No one advocates a return to outworn conceptions. The same public policy that in general sanctions the avoidance of a promise obtained by deceit strikes down all attempts to circumvent that policy by means of contractual devices. In the realm of fact it is entirely possible for a party knowingly to agree that no representations have been made to him, while at the same time believing and relying upon representations which in fact have been made and in fact are false but for which he would not have made the agreement. To deny this possibility is to ignore the frequent instances in everyday experience where parties accept, often without critical examination, and act upon agreements containing somewhere within their four corners exculpatory clauses in one form or another, but where they do so, nevertheless, in reliance upon the honesty of supposed friends, the plausible and disarming statements of salesmen, or the customary course of business. To refuse relief would result in opening the door to a multitude of frauds and in thwarting the general policy of the law."

See *Beacon Hill Civic Assn.* v. *Ristorante Toscano, Inc.*, 422 Mass. 318, 320-321 (1996); *A.Z.* v. *B.Z.*, 431 Mass. 150, 160 (2000).

Although it is the established policy of this Commonwealth to refuse to enforce a merger clause for purposes of protecting a party from liability on account of his fraud and deceit, the instant case does not concern fraud and deceit. Rather, the judgment in Sound's favor rests solely upon the jury's finding of a *negligent misrepresentation*.[6] The question whether public policy concerns also preclude recovery on account of negligently made statements shown to be false is a question of law spoken to but left undecided by this court in *Sheehy* v. *Lipton Indus.*, 24 Mass. App. Ct. at 193 n.5. There we stated: "We believe, although we do not decide, that the rule in *Bates* v. *Southgate*,

---

[6]Hoffman readily concedes that the merger clause would not have relieved it of liability had the jury found that McGloin's statements concerning the expected noise level in Ramrod were intentional misrepresentations.

308 Mass. [at 182], would apply to a misrepresentation that was determined to be negligent rather than intentional or reckless."[7] See *Home Owners Funding Corp.* v. *Century Bank*, 695 F. Supp. 1343, 1346-1347 n.2 (D. Mass. 1988) (noting that it is unclear under Massachusetts law whether an exculpatory clause protects a party against a claim of negligent misrepresentation). Hoffman's appeal puts the question squarely before us.

In considering this issue, as it pertains to commercial transactions, courts of other jurisdictions have reached opposite conclusions. Those that ignore the merger clause do so, essentially, on the basis that the parol evidence rule applies only to contract claims and has no relevance to a plaintiff's tort action. See *Formento* v. *Encanto Bus. Park*, 154 Ariz. 495, 499 (Ct. App. 1987) (one of two grounds for holding); *Keller* v. *A.O. Smith Harvestore Prod., Inc.*, 819 P.2d 69, 73 (Colo. 1991); *Stamp* v. *Honest Abe Log Homes, Inc.*, 804 S.W.2d 455, 457 (Tenn. Ct. App. 1990). On the other side of the issue, in those jurisdictions where recovery has been denied, the courts have taken the view that, in the absence of a deliberate wrongdoing, the terms of the contract control. See *Isler* v. *Texas Oil & Gas Corp.*, 749 F.2d 22, 23-24 (10th Cir. 1984) (applying New Mexico law); *Rio Grande Jewelers Supply, Inc.* v. *Data Gen. Corp.*, 101 N.M. 798, 800 (1984); *Snyder* v. *Lovercheck*, 992 P.2d 1079, 1087-1088 (Wyo. 1999).[8]

Sound argues that, based upon the dictum in *Sheehy* v. *Lipton Indus.*, 24 Mass. App. Ct. at 193 n.5, we should adopt the

---

[7] In *Sheehy*, 24 Mass. App. Ct. at 192-194, 199, we reversed a summary judgment granted to a seller who took refuge in an "as is" exculpatory clause in a purchase and sale agreement in order to escape liability for statements made — "Don't worry about it" — in response to questions about hazardous waste on the property. In concluding that the case was to stand for trial, we specifically noted the tentative nature of our holding as it pertained to various of the numerous counts of the complaint. We cautioned: "The discussion in the preceding parts of this opinion must necessarily be somewhat tentative at this stage of the litigation as we are without knowledge of the facts which may be found at trial. What has been said on various issues should be viewed as essentially preliminary guidance and provisional decisions of law on facts largely unknown at present." *Id.* at 199 n.10.

[8] For an overview of the different approaches to questions raised by claims of precontractual misrepresentations, see generally Cumming, Balancing the Buyer's Right to Recover for Precontractual Misstatements and the Seller's Ability to Disclaim Express Warranties, 76 Minn. L. Rev. 1189, 1201-1206 (1992); Davis, Licensing Lies: Merger Clauses, the Parol Evidence Rule and Pre-Contractual Misrepresentations, 33 Val. U. L. Rev. 485, 489-492 (1999).

reasoning of the court set out in *Formento* v. *Encanto Bus. Park, supra,* and conclude that the parol evidence rule and merger clauses do not preclude an action for negligent misrepresentation.[9] The *Formento* decision is based upon two grounds: (1) because the harm done to the party relying upon the misrepresentation is the same irrespective of whether the misrepresentation was intentionally or negligently made, there is no rational basis for distinguishing between fraud and negligent misrepresentation, and (2) the parol evidence rule has no application in actions based upon tort claims. We think *Formento* lacking in persuasive force for the following reasons.

In concluding that there is no practical difference between fraud and negligent misrepresentations, *Formento* proceeds on the basis that because both categories of claim stand on the same policy ground, that is, the promotion of honesty and fair dealing in business relationships, the fraud exception to the parol evidence rule should have equal force in a claim based upon a negligent misrepresentation. As authority for its reasoning, *Formento* relies upon *Hill* v. *Jones,* 151 Ariz. 81, 84-86 (Ct. App. 1986), a case involving a seller's failure to disclose to the buyer termite damage known to the seller of a residence. In that case, the court states, at 84: "Although the law of contracts supports the finality of transactions, over the years courts have recognized that under certain limited circumstances it is unjust to strictly enforce the policy favoring finality. . . . There is also a judicial policy promoting honesty and fair dealing in business relationships. This policy is expressed in the law of fraudulent and negligent misrepresentations. Where a misrepresentation is fraudulent or where a negligent misrepresentation is one of material fact, the policy of finality rightly gives way to the policy of promoting honest dealings between the parties."

We decline to follow *Formento* and *Hill* because they fail to acknowledge and to take into account the significance of the intent of the misrepresenting party. To ignore a merger clause and allow recovery for a negligent misrepresentation does little to promote honesty and fair dealing in business relationships. An individual who makes negligent misrepresentations has hon-

---

[9]In making this argument, Sound relies solely upon *Formento* and does not acknowledge, and, therefore, does not refute, the analysis set out in the line of cases (*Isler* v. *Texas Oil & Gas Corp., supra; Rio Grande Jewelers Supply, Inc.* v. *Data Gen. Corp., supra;* and *Snyder* v. *Lovercheck, supra*) that rejects the reasoning set out in *Formento.*

est intentions but has failed to exercise due care. See *Snyder* v. *Lovercheck*, 992 P.2d at 1088 ("Fraud and negligence embody two different states of mind, one of which has long been viewed as sufficiently egregious to warrant the intermingling of tort and contract principles via the parol evidence rule").[10] As we read *Bates* v. *Southgate*, 308 Mass. at 182, it is intentional misconduct that justifies judicial intrusion upon contractual relationships in order to prevent the wrongdoer from securing contractual benefits for which he had not bargained. As stated in *Isler* v. *Texas Oil & Gas Corp.*, 749 F.2d at 23-24:

> "In tort, the legislatures and the courts have set the parameters of social policy and imposed them on individual members of society without their consent. The social policy in the field of contract has been left to the parties themselves to determine, with judicial and legislative intervention tolerated only in the most extreme cases. Where there has been intervention, it has been by the application of well established contract doctrines, most of which focus on threats to the integrity of the bargaining process itself, such as fraud or extreme imbalance in bargaining power."

There is nothing in the evidence before us that shows or even suggests that the integrity of the bargaining process was tainted by illegality, fraud, duress, unconscionability, or any other invalidating cause. The lease was not a contract of adhesion. See *Chase Commercial Corp.* v. *Owen*, 32 Mass. App. Ct. 248, 253 (1992) (noting that adhesion contracts are strictly construed against the drafter). Nothing suggests that the bargaining powers of the parties were unequal. Indeed, the evidence showed that Sound was represented by counsel throughout the negotiation process and its acceptance of the lease was conditioned upon an inspection by an acoustical engineer that was in fact conducted. Based upon the evidence presented and the public policy of this Commonwealth, there is no reasonable basis for ignoring the plain language of the merger clause, in which Sound agreed that it was entering into the contract free from

---

[10]In *Snyder* v. *Lovercheck*, 992 P.2d at 1088 n.2, the court also noted that the reasoning in *Formento* had "not been particularly well received by commentators" and cited the article by Cumming, see note 8, *supra*, and Levin, A Proposed Penalty Default Rule Governing a Seller's Ability to Disclaim Liability for Precontractual Misrepresentations, 1997 Colum. Bus. L. Rev. 399.

influence by or in reliance upon any representations other than those set out in the contract.

On the pleadings and evidence presented, we think mistaken the notion (see *Formento* v. *Encanto Bus. Park*, 154 Ariz. at 499) that the parol evidence rule has no application in this tort action. See *Isler* v. *Texas Oil & Gas Corp.*, 749 F.2d at 23, citing and quoting from *Rio Grande Jewelers Supply, Inc.* v. *Data Gen. Corp.*, 101 N.M. at 799, 800 ("to allow the contract to be rewritten under the guise of an alleged action in tort" would be "contrary to the favored policy of 'freedom of contract'. . ."); *Snyder* v. *Lovercheck*, 992 P.2d at 1088 ("The difficulty with [the *Formento*] reasoning is that it ignores the fact that a tort cause of action is being infused into a contractual relationship"). We are not prepared to ignore our general policy of upholding freedom to contract by allowing Sound to avoid a contractual disclaimer that it agreed to, uninfluenced by any fraud or other egregious or intentional misbehavior on Hoffman's part.[11]

5. *Conclusion.* The defendant's motion for judgment notwithstanding the verdict should have been allowed. The judgment in Sound's favor is reversed, and judgment is to enter for the defendant.

*So ordered.*

---

[11]Our holding is based upon the circumstances of the case. We expressly leave for another day those situations involving, among others, consumers, a gross disparity in the bargaining positions of the parties, or unconscionable contract clauses.