Lemire, James R., J.
On March 23, 2006, the plaintiff, Leaf Funding, Inc. (“Leaf’), filed a complaint against the defendants, Snapshot Photo Center, LLC, Carolyn Rhoads and Steven Rhoads (collectively, “Snapshot”), claiming breach of equipment sale agreement, breach of personal guarantee, and demanding judgment for the monies owed on the agreement. On May 16, 2006, Snapshot filed a counterclaim against Leaf and a third-party complaint against Agfa Corporation (“Agfa”), Leafs predecessor on the agreement, alleging breach of express warranty, breach of contract and rescission, unfair and deceptive acts under G.L.c. 93A, §11, misrepresentation and fraud, breach of the implied covenant of good faith and fair dealing, and indemnification.
Before the court is Agfa’s Partial Motion to Dismiss Snapshot’s third-party complaint pursuant to Mass.R.Civ.P. 12(b)(6), Leafs Motion for Summary Judgment on Leafs complaint and counterclaim against Snapshot, and Snapshot’s Cross Motion for Partial Summary Judgment on Leafs complaint. Following a hearing on March 10, 2008, and for the reasons set forth below, Agfa’s Motion to Dismiss Snapshot’s complaint is DENIED, Leafs Motion for Summary Judgment is DENIED, and Snapshot’s Cross Motion for Summary Judgment is DENIED.
BACKGROUND
The defendants, Carolyn and Steven Rhoads, owned and operated Snapshot Photo Center, LLC, a small photography shop. In 2003, Snapshot decided to open a photo lab business and began looking for photographic imaging equipment. It made inquiries with Agfa, a company in the business of manufacturing and selling photographic paper and equipment, and providing the equipment’s service and support. Agfa’s Territory Sales Manager, Joel VonEnde (“VonE-nde”), recommended that Snapshot purchase the Minilab MSC lOl.d machine (“the Minilab”) to print digital photos. During the negotiation process, VonE-nde provided Snapshot with written materials pertaining to the Minilab, and assured Snapshot of Agfa’s commitment to maintain and service the equipment.
*351 Based on Agfa’s demonstration of the Minilab’s capabilities and its representations with regard to the Minilab’s service and maintenance, Snapshot decided to purchase the Minilab. In November of 2003, the parties executed an Equipment Installment Sales Contract (“the Initial Sales Contract”) and Personal Guaranty.[2] In addition to the above documents, Agfa provided Snapshot with a Service Maintenance Agreement (“the SMA”) that guaranteed Agfa’s service and support for the Minilab, including spare parts and components, for a term of sixty months.
The installation of the Minilab took place in January of 2004. At that time, the technician installing the machine discovered that it would not print unless Snapshot purchased and installed a new lens, the cost of which was not contemplated in the Initial Sales Contract. Subsequently, the parties executed a second Equipment Installment Sales Contract (“the Sales Contract”), which included the price of the new lens in the installment payments.[3]
In 2005, Snapshot started experiencing problems with Agfa’s service and support. Beginning in April 2005, Snapshot learned that Agfa ceased the production of its photographic paper and chemistry. On several occasions, Agfa was unable to provide Snapshot with spare parts, causing significant disruption to Snapshot’s business.[4]
In June of 2005, Agfa sent out a letter informing its customers that its parent company, AgfaPhoto GmbH (“AgfaPhoto”), had filed for insolvency in Europe, but assured that Agfa’s business in the United States would not be impacted. In November of 2005, AgfaPhoto sold about 350 leases and installment sales contracts, including the Sales Contract with Snapshot, to Leaf pursuant to a Portfolio Purchase Agreement (“the PPA”). In December of 2005, Agfa informed its customers that a different company would be providing service and support of the equipment, and that Agfa had ceased manufacturing spare parts and components.
Snapshot’s attempts to contact VonEnde to inquire about Agfa’s future and the availability of spare parts and components were unsuccessful, as were subsequent inquiries as to the viability of the service provisions of the Sales Contract. Because of Agfa’s failure to assure them of continued performance, Snapshot stopped making their monthly installment payments. Subsequently, Leaf brought this action to recover the amounts owed on the Sales Contract.
DISCUSSION
I. Agfa’s Partial Motion to Dismiss Snapshot’s Third-Party Complaint A. Standard of Review
For the purposes of a motion to dismiss under Mass.R.Civ.P. 12(b)(6), the court treats the allegations in the complaint as true and draws all reasonable inferences in the plaintiffs favor. Harvard Crimson, Inc. v. President and Fellows of Harvard Coll., 445 Mass. 745, 749 (2006). Prior to the decision in Iannacchino v. Ford Motor Co., 451 Mass. 623 (2008), a complaint would not be dismissed for failure to state a claim unless “it appear[ed] beyond doubt that the plaintiff c[ould] prove no set of facts in support of his claim which would entitle him to relief.” General Motors Acceptance Corp., 413 Mass. at 584, quoting Nader v. Citron, 372 Mass. 96, 98 (1977). The Supreme Judicial Court recently revised this standard by adopting the standard set forth by the United States Supreme Court in Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955 (2007), which states:
While a complaint attacked by a . . . motion to dismiss does not need detailed factual allegations ... a plaintiffs obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions . . . Factual allegations must be enough to raise a right to relief above the speculative level.. . [based] on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . .
Iannacchino, 451 Mass. at 636, quoting Bell Atl. Corp., 127 S.Ct. at 1964-65 (internal quotations omitted). At the pleading stage, the plaintiff is required to present factual “allegations plausibly suggesting (not merely consistent with) an entitlement to relief, in order to reflect! ) the threshold requirement of [Fed.R.Civ.P.] 8(a)(2) that the plain statement possess enough heft to sho[w] that the pleader is entitled to relief.” Iannacchino, 451 Mass. at 636, quoting Bell Atl. Corp., 127 S.Ct. at 1966 (internal quotations omitted).
B. Analysis
In its Partial Motion to Dismiss Snapshot’s third-party complaint pursuant to Mass.R.Civ.P. 12(b)(6), Agfa moves to dismiss Snapshot’s claims against it for breach of express warranty, breach of contract and rescission, breach of the implied covenant of good faith and fair dealing, and indemnification.
i. Breach of Express Warranty Claim
Agfa argues that the language of the Sales Contract expressly disclaims all warranties and relieves Agfa from any obligation to service the equipment.[5] Opposing Agfa’s claim that it provided no warranties with regard to the Minilab’s service and support, Snapshot first argues that, pursuant to G.L.c. 106, §2-313, Agfa created express warranties when it induced Snapshot to enter the contract by guaranteeing the Minilab’s maintenance and support.[6] Second, Snapshot asserts that the Sales Contract’s disclaimer provision is ineffective because it is inconsistent with Agfa’s express warranties[7] and the Sales Contract’s express language.[8]
With regard to Snapshot’s second assertion, where contractual terms are inconsistent or “where the phraseology can support reasonable difference of opinion as to the meaning of the words employed and the obligations undertaken,” it is a question of law for *352 the court to determine whether the contract is ambiguous. Suffolk Const. Co., Inc. v. Lanco Scaffolding Co., Inc., 47 Mass.App.Ct. 726, 729 (1999), citing Fashion House, Inc. v. Kmart Corp., 892 F.2d 1076, 1083 (1st Cir. 1989) (citations omitted). See also Freeloader v. G.&K. Realty Corp., 357 Mass. 512, 516 (1970) (whether a contract is ambiguous is a question of law for the court). When interpreting an ambiguous contract, courts focus on the parties’ intent. See Shane v. Winter Hill Federal Sav. and Loan Ass’n, 397 Mass. 479, 483 (1986) (“It is, of course, true that the intent of the parties is a significant part in the interpretation of a contract”). In evaluating intent, the “court considers the words used by the parties, the agreement taken as a whole, and surrounding facts and circumstances.” Massachusetts Mun. Wholesale Elec. Co. v. Town of Danvers, 411 Mass. 39, 45-46 (1991). Generally, courts construe ambiguous language against the drafting party. Air Plum Island, Inc. v. Society for Preservation of New England Antiquities, 70 Mass.App.Ct. 246, 253 (2007) (courts construe contract against party who wrote it because “drafter ha[s] the capacity and opportunity for clear expression and ... should bear the detriment of unclear expression”).
Here, Snapshot has alleged that, in a meeting that took place prior to the Minilab’s purchase, VonEnde on Agfa’s behalf expressed commitment to provide continual maintenance and support to the Minilab, including spare parts, components and supplies. Snapshot further contends that the inference that maintenance and support were a requirement under the Sales Contract induced Snapshot to enter the transaction with Agfa. Moreover, Snapshot asserts that Agfa’s failure to supply spare parts, chemistry, and paper rendered the Minilab useless and valueless, and that Snapshot would not have entered the transaction had it expected that Agfa would fail to maintain the Minilab. These facts plausibly suggest that Agfa created an express warranty with regard to the Minilab’s service and maintenance, and that it was the parties’ intent that the Sales Contract included service, thus rendering the disclaimer language ineffective. Based on the foregoing, Snapshot has alleged facts plausibly suggesting that it is entitled to relief on the breach of express warranty claim.
ii.Breach of Contract and Rescission
Agfa asserts that Snapshot failed to state a claim for breach of contract and rescission because the Sales Contract does not obligate Agfa to provide service or support for the Minilab, and rescission is not available where the contract has been substantially performed.[9] Snapshot alleges that Agfa had a contractual obligation to provide service and support for the Minilab because the face sheet of the Sales Contract explicitly referred to service.
Written contracts “are to be fairly and reasonably construed to ascertain the intent of the parties and to effectuate their purpose.” Jenkins v. Uniroyal, Inc., 668 F.Sup. 56, 63 (D.Mass. 1987), quoting Whittle v. Pagani Brothers Constr. Co., Inc., 383 Mass. 796, 798 (1981). Snapshot asserts that it entered the transaction with the understanding that Agfa would service and maintain the Minilab and supply all the necessary parts and components. Moreover, Snapshot points out in its opposition to the Motion to Dismiss that Agfa should not have included language pertaining to service in the Sales Contract if it intended to exclude the service obligation.[10] Additionally, Snapshot contends that contemporaneously with the execution of the Sales Contract, Agfa provided Snapshot with the SMA, which further indicates that the parties intended for service to be a part of the Sales Contract. These facts plausibly suggest that Snapshot has a claim for breach of contract and rescission.
iii.Breach of Implied Covenant of Good Faith and Fair Dealing
Agfa argues that, because no contractual obligation to service the equipment existed, Agfa could not have breached the implied covenant of good faith and fair dealing. Arguing that Agfa had a contractual obligation to provide service and maintenance and its failure to do so injured Snapshot, Snapshot contends that it has stated a claim for breach of the implied covenant of good faith and fair dealing. See Uno Rests. v. Boston Kenmore Realty, 441 Mass. 376, 385 (2004) (covenant breached where “party injures the rights of another to reap the benefits prescribed by the terms of the contract”). Because the court finds that Snapshot has stated a claim for breach of contract, this claim stands as well.
iv.Indemnification
Agfa contends that Snapshot’s indemnification claim fails because the parties did not have an express agreement regarding indemnification, and there was no implied contractual right to indemnification based upon their relationship. Snapshot argues that Agfa’s contractual obligation to service the Minilab created an implied right to indemnification. See Great Atl. & Pac. Tea Co. v. Yanofsky, 380 Mass. 326, 331-32 (1980) (express agreement to make repairs created indemnification right to damages arising from failure to do so). As Snapshot has alleged facts plausibly suggesting that it is entitled to relief on the breach of contract claim, this claim survives.
Taking all of the above facts as true and drawing all reasonable inferences in Snapshot’s favor, the facts “plausibly suggest! ] ... an entitlement to relief’ for Snapshot’s claims under the new heightened standard for evaluating motions to dismiss, thus necessarily satisfying the old standard. Iannachino, 451 Mass. at 636. Thus, granting the Motion to Dismiss against Snapshot would be inappropriate at this juncture. The court recognizes that these issues are better raised in a summary judgment motion.
*353 Based on the foregoing reasons, Agfa’s partial motion to dismiss Snapshot’s third-party complaint must be denied.
II. Leafs Motion for Summary Judgment and Snapshot’s Cross Motion for Partial Summary Judgment A. Standard of Review
A summary judgment motion is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that the record entitles them to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party who does not bear the burden of proof at trial may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Commc’ns. Corp., 410 Mass. 805, 809 (1991). Once the moving party “establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact.” Pederson, 404 Mass. at 17. The court reviews the evidence in the light most favorable to the nonmoving party, but does not weigh evidence, assess credibility, or find facts. See Attorney Gen. v. Bailey, 386 Mass. 367, 370-71 (1982).
B. Analysis
Leaf brings a Motion for Summary Judgment in its favor on Leafs complaint and the counterclaim against Snapshot. It argues that Snapshot is liable on the Sales Contract because a provision of the PPA between Agfa and Leaf insulates Leaf, as Agfa’s as-signee, from any claims or defenses of the kind asserted by Snapshot.[11] It also provides that Leaf receives the right to payments on the equipment lease agreements and installment sales contracts without assuming any of Agfa’s contractual obligations or responsibilities.
Under G.L.c. 106, §9-402(b)(l)-(4), such provision is enforceable provided that the assignee took the assignment for value, in good faith, and without notice of a claim or defense of the account debtor. With regard to the notice and good faith requirements, Leaf asserts that, at the time of its acquisition of the lease portfolio from Agfa, Leaf had no knowledge of any possible claims under the Snapshot’s Sales Contract as Snapshot was making timely payments. Furthermore, Leaf alleges that it had no basis to foresee any such claims because the Sales Contract did not mention any servicing obligations.[12] Based on these assertions, Leaf also argues that Snapshot may not invoke the protections of the implied covenant of good faith or G.L.c. 93A, §11.
In its Cross Motion for Partial Summary Judgment, Snapshot opposes Leafs contention that it took the assignment in good faith and without notice of any claims or defenses, and asserts that it is subject to Snapshot’s claims and defenses.[13] It also argues that pursuant to G.L.c. 106, §3-605(d)-(f), the defendants Steven and Carolyn Rhoads have been discharged of any personal obligations under the contract under the material modification and impairment of collateral theories.
i. Good faith and Notice Claims
With regard to notice, Snapshot argues that Leaf was fully aware of Agfa’s service obligations under the Sales Contract because the face sheet of the document expressly referred to such. Furthermore, Snapshot asserts that Leaf did not take the assignment in good faith. Specifically, it asserts that Leaf directed its payment for the leases and installment sales contracts to Agfa’s German parent company to insulate the sale proceeds from any liability incurred upon the termination of service obligations under the Sales Contract.
To further advance this position, Snapshot argues that the Sales Contract and the SMA should be read as a single integrated contract, the terms of which expressly imposed a contractual obligation on Agfa to serve and maintain the Minilab. Massachusetts courts have held that, if two or more “documents were in essence part of one transaction, they must be read together to effectuate the intention of the parties.” Chase Commercial Corp. v. Owen, 32 Mass.App.Ct. 248, 250 (1992). In determining whether two separate documents should be treated as a single integrated contract, courts look at such factors as “simultaneity of execution, identify of subject matter and parties, cross-referencing, and interdependency of provisions.” Gilmore v. Century Bank & Trust Co., 20 Mass.App.Ct. 49, 56 (1985).
Snapshot argues that the Sales Contract, the SMA, and the Personal Guaranty should be treated as one fully integrated agreement because they were executed simultaneously and were a necessary part of the same transaction. Leaf, on other hand, argues that the Sales Contract and the SMA are two different documents because, in addition to containing individual integration clauses, the documents apply the laws of two different states, and were not executed simultaneously. [14] Because there is a genuine issue of material fact as to whether the contract and the SMA constitute a single integrated contract or are two entirely separate agreements, it cannot be determined whether Leaf took the assignment in good faith and with notice of Snapshot’s claims and defenses and is subject to Snapshot’s claims and defenses.
ii. Discharge of Personal Guarantee
Snapshot argues that, pursuant to G.L.c. 106, §3-605, defendants Steven and Carolyn Rhoads (“the Rhoadses”) have been discharged of their obligations *354 under the Personal Guarantee because a material modification and breach of the Sales Contract occurred when Agfa ceased manufacture of critical parts and components and transferred its obligations to Leaf.[15] Specifically, Snapshot asserts that, because the Rhoadses signed the Personal Guarantee in reliance on Agfa’s continual service of the Minilab, the termination of Agfa’s service and its transfer of its obligations to Leaf constituted a material modification. Moreover, Snapshot contends that Agfa’s actions constitute a material impairment of the collateral, as Agfa’s failure to serve the equipment rendered it useless and valueless.
In opposition, Leaf states these claims lack substance, and argues that the Personal Guarantee’s language expressly prevents the Rhoadses from pursuing any defenses against Leaf. In light of the fact that a genuine issue of material fact exists as to whether or not Leaf is subject to Snapshot’s claims and defenses, the court need not address this issue.
For the foregoing reasons, Leafs Motion for Summary Judgment and Snapshot’s Cross Motion for Summary Judgment is denied.
ORDER
Based on the foregoing, Third-Party Defendant Agfa Corporation’s Partial Motion to Dismiss is DENIED, Plaintiff and Defendant in Counterclaim Leaf Funding, Inc.’s Motion for Summary Judgment is DENIED, and Defendant, Plaintiff in Counterclaim, and Third-Party Plaintiff Snapshot Photo Center, LLC’s Cross Motion for Summary Judgment is DENIED.

In addition to listing the amount of monthly installment payments, the face sheet of the Initial Sales Contract made a reference to service. Specifically, it provided that: “The Time Balance shall be payable in equal consecutive monthly payments of 61.419.41 plus service of S319.00 each.”

Like the Initial Sales Contract, this Sales Contract suggested that service was included in the monthly installment payments.

Specifically, Agfa had difficulty supplying a new lens for the Minilab on one occasion and failed to supply a heater for the tank a few months later.

Paragraph 2 of the ‘Terms and Conditions” section of the Sales Contract contains the following language: “SELLER MAKES NO WARRANTY, EXPRESS OR IMPLIED, AS TO ANY MATTER INCLUDING THE FITNESS FOR USE OR PURPOSE, MERCHANTABILITY, DESIGN, CONDITION, CAPACITY, PERFORMANCE OR ANY OTHER ASPECT OF THE EQUIPMENT OR ITS MATERIAL OR WORKMANSHIP.” It further states: “SELLER SHALL HAVE NO OBLIGATION TO INSTALL, MAINTAIN, ERECT, TEST, ADJUST, OR SERVICE THE EQUIPMENT.” (Emphasis in original.)

G.L.c. 106, §2-313(a) states that express warranties are created by seller by: “Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.”

Snapshot relies on G.L.c. 106, §2-316(1), that states: “Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but subject to the provisions of this Article on parol or extrinsic evidence (section 2-202) negation or limitation is inoperative to the extent that such construction is unreasonable).”

In its Opposition to Agfa’s Motion to Dismiss, Snapshot asserts that the Sales Contract obligated Agfa to service and maintain the equipment because it references a monthly service payment on the face of the document. Following the hearing on the Motion to Dismiss and the Summary Judgment Motions, Snapshot adopted the position that Agfa had contractual obligations to service the Minilab because the Sales Contract and the SMA constitute one integrated writing (see the Summary Judgment section for discussion).

Agfa asserts that the only obligation it had under the Sales Contract was to sell photographic equipment. Thus, it contends that it fully complied with its contractual obligations.

Snapshot also argues that the Sales Contract’s exculpatory, disclaimer, waiver and merger clauses are invalid because the Sales Contract was a contract of adhesion and Agfa induced Snapshot into entering the contract by making fraudulent and/or negligent representations as to the Sales Contract’s terms. This argument is without merit. First, Snapshot’s reliance on Sound Techniques, Inc. v. Hoffman, 50 Mass.App.Ct. 425, 432-33 (2000), is misplaced because the Sound Techniques court specifically refused to void a merger clause on the grounds of a negligent misrepresentation. Id. Second, Snapshot fails to demonstrate that “the integrity of the bargaining process was tainted by illegality, fraud, duress, unconscionability, or any other invalidating cause.” Id. at 433. Moreover, this court is unconvinced that the Sales Contract was a contract of adhesion as “nothing suggests that the bargaining powers of the parties were unequal.” Id.

This provision is contained in the PPA, §2.2{a).

Leaf asserts that at the time it acquired the Sales Contract, it did not acquire any warranty, servicing, or maintenance agreements between Agfa and its customers.

Snapshot also argues that, pursuant to G.L.c. 106, §3-302(c)(ii), Leaf may not seek protection as a holder in due course because it purchased the Sales Contract as part of a bulk transaction and not in the ordinary course of business of the transferor. In its opposition to Snapshot’s Cross Motion for Partial Summary Judgment, Leaf states that it has not adopted the position that they are insulated by the holder in due course doctrine, and seeks protection under their as-signee status instead.

The SMA applies New Jersey law while the Sales Contract calls for the application of Massachusetts law. Furthermore, the SMA was executed together with the Initial Contract, but the parties did not execute a new SMA when the second and final version of the contract went into effect.

G.L.c. 106, §3-605(d), provides that: “(i]f a person entitled to the instrument agrees, with or without consideration, to a material modification of the obligation of a party other than an extension of the due date, the modification discharges the obligation of an indorser or accommodation party . . .” G.L.c. 106, §§3-605(e) and (f), state that a party’s obligations to pay an instrument that is secured by an interest in collateral is discharged when a person entitled to enforce the instrument impairs the collateral interest’s value. Furthermore, under G.L.c. 106, §3-605(f), “. . . impairing value of an interest in collateral includes .. . failure to perform a duty to preserve the value of collateral owed ... to a debtor or surety or other person secondarily liable.”