ROBERT L. FOX & another[1] *vs.* F & J GATTOZZI
CORPORATION.

No. 94-P-1243.

Middlesex. November 15, 1995. - November 14, 1996.

Present: SMITH, IRELAND, & GREENBERG, JJ.

*Practice, Civil,* Judgment notwithstanding verdict. *Contract,* Retirement, Performance and breach, Unjust enrichment. *Damages,* Negligent misrepresentation, Breach of contract. *Frauds, Statute of.*

In a civil action the plaintiffs were not entitled to raise on appeal a procedural issue with respect to the judge's allowance of the defendant's motion for judgment notwithstanding the verdict, where the plaintiffs had not properly objected below. [583-584]

At the trial of a claim for negligent misrepresentation, there was sufficient evidence that the defendant withheld information from the plaintiffs in order to induce the plaintiffs to continue working for the defendant to submit the claim to the jury: the judge erred in granting the defendant's motion for judgment notwithstanding the verdict. [586-588]

In a civil action in which the plaintiffs presented sufficient evidence to sustain their claims for negligent misrepresentation, breach of contract, and unjust enrichment, the judge correctly granted the defendant's motion for judgment notwithstanding the verdict on the unjust enrichment count on the ground that recovery thereon would be duplicative. [588-589]

In a civil action there was no error in the judge's denial of the defendant's motion for a new trial on the ground that the damages were duplicative. [589-591]

In an action for breach of contract and negligent misrepresentation, the defendant's claims as to the defense of the Statute of Frauds were without merit inasmuch as the Statute of Frauds was not applicable in the circumstances presented. [591]

In a civil action the judge correctly denied the defendant's motions for a directed verdict and for judgment notwithstanding the verdict based on a claim that the corporate defendant could not be held responsible as a successor corporation. [591]

In a civil action the judge properly allowed in evidence certain answers to interrogatories from previous litigation between the corporate defendant and one of its principals. [591]

CIVIL ACTION commenced in the Superior Court Department on January 29, 1991.

---

[1]William S. Antonucci.

The case was tried before *Julian T. Houston,* J.

*Robert D. Cohan* for the plaintiffs.

*Donald E. Church* for the defendant.

SMITH, J. The plaintiffs, Robert L. Fox and William S. Antonucci, brought a complaint in the Superior Court against the defendant, F & J Gattozzi Corporation (F & J), alleging a breach of an oral contract, negligent misrepresentation, and unjust enrichment.[2] The action arose out of a dispute as to whether the plaintiffs were entitled to retirement benefits under the terms of an alleged oral contract. The three claims were submitted to the jury on nine special questions. The jury responded with answers in favor of the plaintiffs on all three of their claims.

The defendant filed a motion for judgment notwithstanding the verdict, Mass.R.Civ.P. 50(b), 365 Mass. 814 (1974), and a motion for a new trial, Mass.R.Civ.P. 59, 365 Mass. 827 (1974). The trial judge granted the defendant's motion for a judgment notwithstanding the verdict on the negligent misrepresentation and unjust enrichment claims but denied the defendant's motion on the breach of contract claim. The judge also modified the damage award and denied the defendant's motion for a new trial. A judgment was entered for the plaintiffs on the breach of contract claim; the judgment dismissed the remaining claims.

The plaintiffs appeal from that portion of the judgment dismissing the negligent misrepresentation and unjust enrichment claims. The defendant appeals from that portion of the judge's order denying its motion for a judgment notwithstanding the verdict on the breach of contract claim and also from the denial of its motion for a new trial. The defendant claims that the trial judge (1) erred in instructing the jury on the Statute of Frauds, (2) erred in denying the defendant's motion for a directed verdict because the Statute of Frauds bars enforcement of the agreement and because there was insufficient evidence of successor corporate liability, and (3) erred in allowing in evidence certain answers to interrogatories.

I. *Plaintiffs' claims on appeal.*

The plaintiffs raise both procedural and substantive grounds

---

[2]The complaint also alleged claims of fraud and negligence against F & J. At trial, those claims were dismissed on the plaintiffs' motion. The complaint also named Joseph Gattozzi as a defendant. The plaintiffs voluntarily dismissed with prejudice the claims against Gattozzi.

in challenging the judge's allowance of the defendant's motion for judgment notwithstanding the verdicts on the plaintiffs' claims for negligent misrepresentation and unjust enrichment.

A. *Procedural grounds.* At the close of the plaintiffs' case, the defendant moved for a directed verdict specifying two grounds: that the alleged agreement was barred by the Statute of Frauds and that the defendant was not responsible under successor corporate liability theories of law. The motion was denied. The motion was renewed at the close of all the evidence and was again denied.

In its motion for judgment notwithstanding the verdict, the defendant again raised its theory that it was not liable as a successor corporation and also included, for the first time, claims that the evidence was insufficient to support the verdicts for negligent misrepresentation and unjust enrichment. On appeal, the plaintiffs argue that the judge committed error when he granted the defendant's motion on the plaintiffs' negligent misrepresentation and unjust enrichment claims because the grounds set forth by the defendant to justify granting the motion were not raised in its motion for a directed verdict. The defendant responds that the plaintiffs waived their right on appeal to challenge the grounds of the motion because they failed to object properly below. We agree with the defendant.

The general rule is that "no grounds for the motion for judgment notwithstanding the verdict may be raised which were not asserted in the directed verdict motion." *Bonofiglio* v. *Commercial Union Ins. Co.,* 411 Mass. 31, 34 (1991). However, if the nonmoving party fails to object to the judge's consideration of new grounds in deciding whether to grant the motion, then the nonmoving party is said to have waived the right to object on appeal. *Southern Mass. Broadcasters, Inc.* v. *Duchaine,* 26 Mass. App. Ct. 497, 501 (1988) (where a nonmoving party "failed to object on grounds of lack of specificity, or on any other grounds, to the judge's consideration of the [newly raised] issue on the motion for judgment notwithstanding the verdict . . . [and the nonmoving party was not] prejudiced in any way by the judge's consideration of that issue on the motion for judgment notwithstanding the verdict as [the nonmoving party] had the opportunity to submit a brief and argue it fully before the trial court . . . .

[t]he right to raise the procedural point on appeal was waived"). See also *Soares* v. *Lakeville Baseball Camp, Inc.,* 369 Mass. 974, 975 (1976). Here, because there was no objection below, the plaintiffs waived the opportunity to raise the procedural issue on appeal.

B. *Sufficiency of the evidence.* The standard for reviewing whether a judge properly granted a motion for judgment notwithstanding the verdict based on the sufficiency of the evidence or lack thereof, is "whether 'the evidence, construed against the moving party, justif[ies] a verdict against him.' *D'Annolfo* v. *Stoneham Hous. Auth.,* 375 Mass. 650, 657 (1978)." *Bonin* v. *Chestnut Hill Towers Realty Corp.,* 392 Mass. 58, 59 (1984). *Henderson* v. *D'Annolfo,* 15 Mass. App. Ct. 413, 419 (1983). In reviewing the sufficiency of the evidence, we look to see "whether 'anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff.' " *Poirier* v. *Plymouth,* 374 Mass. 206, 212 (1978), quoting from *Raunela* v. *Hertz Corp.,* 361 Mass. 341, 343 (1972). Weight and credibility of the evidence are not to be considered. *Sahagan* v. *Commonwealth,* 25 Mass. App. Ct. 953 (1988).

Under the above standard, we summarize the facts and reasonable inferences to be drawn from those facts. C & T Wallpaper Company (C & T) sold paint and wallpaper at retail. The plaintiff Fox was hired by C & T in 1936 and worked part-time: stocking the shelves, cleaning the store, and maintaining the inventory. He became a full-time employee in 1938. He was hired by C & T's then owner, one Cacciagrani, who was married to Fox's sister, Frances, who worked as the store's bookkeeper at the time. Fox left C & T in 1941 when he was hired by the United States Navy as a civilian employee. He returned in 1946, and in 1949, C & T opened a store in Wellesley. Fox became manager of that paint store. Since 1946, he has worked without interruption for C & T.

The plaintiff Antonucci was hired by Cacciagrani in 1948 as a stock boy. He became a comanager of the Wellesley paint store in 1949 and has continued in C & T's employ without interruption. After Antonucci was hired as comanager, Fox went to C & T's store in Hyde Park where he assumed a management position in addition to his duties at the Wellesley store.

In 1960, Fox's sister, Frances, and Cacciagrani divorced, and, as a result, Frances acquired the business. In 1964, Frances married her present husband, Joseph Gattozzi (Joseph). They moved to Vermont, and Fox took over the business for his sister. Frances returned from Vermont in the mid-sixties and resumed working for C & T. From the 1970's on, Frances and Joseph handled all of the corporation's books.

C & T incorporated in 1965. The incorporators were Fox, Antonucci, and one Jones, the husband of Frances's oldest daughter. Fox and Antonucci were officers. Fox was C & T's president; Antonucci was its clerk. Frances served as a director with Fox, Antonucci, and others. About the first of February, 1971, C & T was involuntarily dissolved by the Commonwealth because of the nonfiling of certificates of condition. Fox and Antonucci were unaware of the dissolution.

In 1979, Fox, Antonucci, and Frances, then the only officers of C & T according to Fox's knowledge, discussed the matter of retirement benefits. At the time, Fox and Antonucci were co-managers of the Wellesley store. Fox, then age fifty-eight, had been working for C & T for thirty-three consecutive years, while Antonucci, then age fifty-five, had been there thirty-one years, and each was concerned that nothing had been established by C & T in the way of retirement for them. It was agreed on that occasion that once Fox and Antonucci turned sixty-five, each would receive eighty percent of his last salary figure as retirement benefits paid weekly, biweekly, or monthly until his death. Frances told Fox and Antonucci that she would speak with her husband about obtaining a source, such as life insurance, to pay for the retirement benefits. Within a few days, Joseph contacted Antonucci, gave him life insurance applications, and informed him that an insurance agent would be meeting with Fox and Antonucci to discuss the insurance policies through which the retirement benefits would be at least partially funded.

Fox and Antonucci then met with an insurance agent, who informed them that the insurance policies would: (1) pay C & T $70,000 to buy out their interest in the company if either died before reaching sixty-five years of age or (2) help the company, because of the cash surrender value, pay their retirement benefits if they lived past sixty-five years of age. After medical examinations, Fox and Antonucci understood that the policies had been issued. If the agreement to provide

the retirement benefits had not been reached, Fox and Antonucci would have sought employment elsewhere for both had other employment opportunities that they had turned down because of their understanding about retirement benefits.

In February, 1987, F & J was incorporated to engage in the paint and wallpaper business. Frances was the president and clerk of the new corporation, and Joseph was the treasurer. Frances and Joseph were the only directors. In April, 1987, as a result of an application to the Secretary of State for the Commonwealth by Joseph, C & T was revived for the limited purpose of transferring its assets to F & J. F & J continued doing business as "C & T Paint and Wallpaper" and assumed the same identical operation: paychecks and W-2 forms were issued by C & T; F & J had the same customers and employees; and, F & J operated out of the same locations as C & T. In addition, F & J assumed C & T's debts to its trade creditors, and Fox and Antonucci maintained identical work responsibilities after 1987. Fox and Antonucci did not learn that they were, in fact, working for F & J, rather than C & T, until 1988.

Some months before Frances and Joseph transferred C & T to F & J, Fox turned sixty-five and asked Frances about the retirement benefits he thought were due him. His salary at the time was $390.45 per week. Frances told him that there was no money to pay him. Because he did not receive any retirement benefits, Fox was forced to continue to work for F & J. In April, 1989, Antonucci became sixty-five years old. His weekly wage was $494.63. He never received any retirement benefits and also was forced to continue working.[3]

Joseph testified that both Fox and Antonucci were assets to the corporation and could not be easily replaced without a loss to C & T/F & J. He also stated that any offer to pay retirement benefits to Fox and Antonucci was a "good will" gesture which could be withdrawn at any time and that neither Frances nor C & T/F & J considered themselves bound to provide the retirement benefits.

1. *Sufficiency of evidence as to negligent misrepresentation claim.* The judge allowed the defendant's motion for judg-

---

[3]As to the insurance policies, in September, 1988, more than two years after Fox's pension rights had vested and months before Antonucci's rights were to vest, a loan was taken out on one policy, and the other policy was cancelled. Both checks were made payable to C & T and cashed by F & J.

ment notwithstanding the verdict on the ground that, although "[t]here was evidence indicating that the plaintiffs were informed of the retirement benefits and that life insurance policies would be used as partial funding . . . there is no evidence on the record indicating that [Frances] supplied false information to Fox and Antonucci."

The plaintiffs argue that the judge committed error because the record demonstrated that Frances (and C & T) made, in effect, false statements because they withheld important information at two distinct times. The plaintiffs point to the following evidence to support their argument.

First, they argue that at the time of the agreement, Frances and C & T withheld information that they did not consider themselves bound to provide retirement benefits but, instead, believed that their provision was discretionary, a good will gesture that could be withdrawn at any time. Second, plaintiffs argue that, once C & T transferred its assets to F & J, information was withheld concerning F & J's intention not to pay the benefits as evidenced by the use of the insurance policies for other purposes.

The defendant argues that the judge properly granted the motion because Frances's representations were "vague and inconclusive," and there was no evidence that she had a present intent to misrepresent any facts when she made the statements. We reject that argument because the plaintiffs' claim is for negligent misrepresentation, not intentional misrepresentation. Therefore, there was no need for the plaintiffs to prove the intent of Frances.

A defendant can only be found liable for negligent misrepresentation if "in the course of his business, . . . [he] supplies false information for the guidance of others in their business transactions, [such a person] is subject to liability for pecuniary loss caused to [the others] by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." Restatement (Second) of Torts § 552(1) (1977); *Lawton* v. *Dracousis,* 14 Mass. App. Ct. 164, 171 (1982). "Honesty requires only that the maker of a representation speak in good faith and without consciousness of a lack of any basis for belief in the truth or accuracy of what he says." Restatement (Second) of Torts § 552(1) comment a (1977). "[T]he defendant is subject to liability if, but only if, he has failed to

exercise the care or competence of a reasonable [person] in obtaining or communicating the information." *Id.* at comment e. "The question is one for the jury, unless the facts are so clear as to permit only one conclusion." *Ibid.*

The evidence examined in the light most favorable to the plaintiffs would have permitted the jury to find the following facts. Fox, Antonucci, and Frances conversed about retirement benefits. They agreed that the plaintiffs would receive eighty percent of their last salary when they reached sixty-five years of age and that these benefits would continue until their deaths. At the end of this conversation, Frances said that she would speak to her husband to "see if they could come up with some sort of plan." Ultimately, life insurance policies were purchased for both the plaintiffs with the intent that they would be cashed in when the plaintiffs reached retirement age to help fund their benefits, or, if the plaintiffs died before they reached sixty-five, the policies would be cashed in to purchase company stock held by their wives. The evidence then showed that C & T was sold to F & J without the plaintiffs' knowledge. Subsequently, F & J/C & T experienced financial problems and took out a loan against one policy and cancelled the other. The plaintiffs were never informed that their policies would no longer be used to fund their retirements. A reasonable inference could be drawn that Frances withheld that information for the purpose of inducing the plaintiffs, who were indispensable employees, to continue working for F & J/C & T. That information might well have been critical to the plaintiffs' decision to remain in F & J/C & T's employ.

We hold that there was sufficient evidence introduced by Fox and Antonucci on their negligent misrepresentation claims to have the matter considered by the jury. Whether the damages for negligent misrepresentation are duplicative, we discuss in section IIA of this opinion.

2. *Sufficiency of evidence as to unjust enrichment claim.*

A plaintiff may seek recovery under multiple counts but may not recover cumulative, duplicative damages from those counts. *Charles River Constr. Co.* v. *Kinksey,* 20 Mass. App. Ct. 333, 344 (1985). Because damages in a tort claim and a contract claim often overlap, a plaintiff must present evidence of distinct, separate losses to justify recovery beyond the breach of contract claim. *Id.* at 345-346.

The plaintiffs presented sufficient evidence to sustain their causes of action for both breach of contract (see section II B, *infra*) and unjust enrichment. In defining a claim for unjust enrichment, Restatement of Restitution § 1 (1937) states, "A person who has been unjustly enriched at the expense of another is required to make restitution to the other." In view of our conclusion that the plaintiffs have sustained causes of action for both breach of contract and negligent misrepresentation, any damages under an unjust enrichment claim would, necessarily, be duplicative. The judge did not err in granting the defendant's motion for judgment notwithstanding the verdict on the unjust enrichment count.

II. *Defendant's claims on appeal.*

A. *The issue of duplicative damages.* In its motion for a new trial, the defendant claimed that the judge "failed to adequately instruct the jury regarding damages, thereby misleading the jury and causing them inappropriately to calculate and award damages under [the breach of contract, negligent misrepresentation, and unjust enrichment counts]." The judge denied the defendant's motion for a new trial.

The special questions presented to the jury were formulated in such a way as to suggest that the plaintiffs could recover damages on all three counts. Counsel drew the judge's attention to the possibility that the jury might award duplicative damages if they found in favor of the plaintiffs on more than one of the plaintiffs' claims. The judge's instructions to the jury covered twenty-three pages of the transcript. His instructions to the jury on the issue of damages consisted of less than one-half a page. He did not instruct the jury on the matter of duplicative damages. There was an objection to that omission and a request to instruct the jury that there cannot be a "double or triple recovery." The judge refused so to instruct, stating, "I think they will figure that out. I will take care of any problem that comes as a result of that."

In their answers to the special questions, the jury returned the following damages awards. On the plaintiffs' breach of contract claim, the jury found that C & T made an oral promise to provide benefits, that F & J assumed liability for payment of the benefits, and that the yearly amounts of benefits owed to Fox and Antonucci were $16,224 and $20,384, respectively. The jury also found, on the plaintiffs' negligent misrepresentation claim, that C & T made a state-

ment to the plaintiffs that C & T knew or reasonably should have known was false and on which the plaintiffs justifiably relied, and awarded damages in the amount of $146,016 for Fox (nine times his $16,224 annual benefit), and $91,728 for Antonucci (four and one-half times his $20,384 annual benefit). On the unjust enrichment claim, the jury also cryptically found that F & J was unjustly enriched by $137,695.85 as to Fox (about which the jury stated "[o]ur intention is to award Fox $40,351.85 of this amount") and $74,213.14 as to Antonucci (about which the jury stated "[o]ur intention is to award . . . Antonucci $13,066.14").

On the bottom of the jury's special question form, the jury wrote: "The sum totals of our awards to the plaintiffs is Fox $186,367.85 and Antonucci $104,794.14 and for each the yearly amount of retirement benefits."

We note that the jury's award of damages on the three counts reflects some confusion on their part. For example, Fox reached age sixty-five in May, 1986, and Antonucci reached age sixty-five in April, 1989. As of the date of the verdict (July 20, 1992), Fox was entitled to six and one-quarter years of benefits and Antonucci was entitled to three and one-quarter years of benefits. Why there is a discrepancy between these years and the jury's use of nine years and four and one-half years, respectively, is unknown and certainly not explained in the record.

As stated earlier, the judge granted the defendant's motion for judgment notwithstanding the verdict on both the negligent misrepresentation and unjust enrichment claims. The judge entered a judgment on the breach of contract claim for plaintiff Fox in the amount of $109,512 together with interest in the amount of $26,830, costs, and ongoing retirement benefits of $16,224 a year until death. Plaintiff Antonucci recovered $78,138 under the breach of contract claim, together with interest in the amount of $19,144, costs, and an annual benefit of $20,384 until death. In his memorandum of decision and order on the defendant's motion for judgment notwithstanding the verdict and for a new trial, the judge found that there was adequate evidence to support the jury's yearly awards on the breach of contract claims. Although the defendant has argued that the contract is not enforceable (see discussion of Statute of Frauds, *infra*), on appeal the defendant has not challenged the correctness of the underlying

*amounts* from which the damage award on the breach of contract claim was calculated, nor the arithmetical accuracy of the judgment on the breach of contract claim.

B. *Other issues raised by the defendant.* The defendant's claims as to the defense of the Statute of Frauds are without merit. The instructions given by the judge not only conformed precisely to what the defendant requested but, also, no objection was made relating to the issues that the defendant now raises.

The judge did not err in denying the defendant's motions for a directed verdict and for judgment notwithstanding the verdict insofar as they were based on the ground that the Statute of Frauds barred enforcement of the agreement. There is case law to support the proposition that the Statute of Frauds has no application here. In responding to an argument about the Statute of Frauds in the context of the enforceability of a contract for permanent employment, the Supreme Judicial Court held, in *Boothby* v. *Texon, Inc.,* 414 Mass. 468, 479 (1993), "Because Boothby's contract was for permanent employment, it could have been performed within one year: Boothby could have died or Texon could have discontinued its business, at which point its obligation to employ Boothby would end." Similarly here, the plaintiffs could have died within one year, and the defendant's obligation would have ended with its purchase of stock. On appeal, the defendant argues that there was insufficient evidence of estoppel to remove the agreement from the bar imposed by the Statute of Frauds. Because that issue was not raised below and in view of our holding that the Statute of Frauds does not prohibit enforcement here in any event, we need not consider the argument now. *Royal Indemnity Co.* v. *Blakely,* 372 Mass. 86, 88 (1977). Parenthetically, we note that the plaintiffs did present sufficient evidence of estoppel.

The defendant's motion for a directed verdict (and subsequent motion for judgment notwithstanding the verdict) were also based on its claim that F & J could not be held responsible, as a successor corporation, for C & T's debts and liabilities. The judge below correctly denied the motions on that basis. See *McCarthy* v. *Litton Indus., Inc.,* 410 Mass. 15, 21 (1991).

Finally, the judge did not commit error in allowing in evidence certain answers to interrogatories from previous litigation between C & T and Joseph Gattozzi.

Because no issue was raised on appeal as to the propriety of the amount of damages awarded on the breach of contract claim, the judgment will stand as to the amount awarded on that claim. Execution is to issue forthwith on that portion of the judgment.

The portion of the judgment that dismisses Count III of the complaint, the claim for negligent misrepresentation, is vacated. As we have sustained a finding of liability on that count, the matter is remanded for further proceedings on that count on the issue of damages only, with the caveat that no damages awarded under that count may be duplicative of those already awarded under the breach of contract claim. In all remaining aspects, the judgment is affirmed.

*So ordered.*