Lauriat, Peter M., J.
This action arises out of a failed business relationship between plaintiff Joel M. Albrizio (“Albrizio”) and defendants John P. Puccio (“Puccio”) and Celestino A. DiGiovanni (“DiGiovanni”) (collectively, “the defendants”) with respect to the governance of Adlife Marketing and Communications Co., Inc. (“Adlife”), a company in which the three once held equal shares. Now before the court is the defendants’ motion to dismiss Albrizio’s complaint, pursuant to Mass.R.Civ.P. 12(b)(6), for failure to state a claim. For the following reasons, the defendants’ motion is allowed.
BACKGROUND
The court takes as true the following facts set forth in the plaintiffs’ complaint. See Marshall v. Stratus Pharm., Inc., 51 Mass.App.Ct. 667, 670-71 (2001). Adlife creates and prints advertising flyers for retail sales businesses to be distributed through newspapers and other print outlets. In September 1994, Albrizio, who had owned a similar business, agreed to purchase a 33.3% share of Adlife from Puccio and DiGiovanni for $200,000, payable over two years in the form of a tender back of Albrizio’s earned bonuses. The parties entered into a series of agreements, including a Corporate Control Agreement (the “Agreement”) dated September 7, 1994, an undated Covenant Not To Compete, and an agreement related to the disposition of corporate shares dated September 7, 1994. Albrizio, Puccio and DiGiovanni signed each instrument in their individual capacities.
The Agreement provides that Puccio, DiGiovanni and Albrizio each own one third stock in Adlife and Advision Corporation (“Advision”), and are directors and officers of the companies.[1] It states, by way of introduction, that:
WHEREAS, the Shareholders, being the owners of all of the authorized, issued and outstanding stock of the Corporations, desire to set forth the agreement which they have made among themselves concerning the operation, ownership, and control of the Corporations’ business.
The Agreement contains an arbitration provision which reads:
If any controversy or claim arising out of this Agreement cannot be settled by the Shareholders, it shall be settled by Arbitration in accordance with the rules of the American Arbitration Association then in effect. . .
The non-competition agreement was amended by an agreement dated January 16, 2006, which provided that Albrizio “may pursue clients for radio and television advertising outside of his employment with and ownership interest in [Adlife].”
Albrizio asserts that, since 2001, Puccio and DiG-iovanni have frozen him out of “the governance and operational decision making” of Adlife, resulting in lost clients and profit. In January 2010, Puccio “gave his voting interest in his 33% in Adlife” to DiGiovanni, reducing Albrizio to a minority shareholder. In addition, the complaint claims that Puccio and DiGiovanni have made “disguised dividends” to themselves by employing their children in jobs for which they are not qualified at excessive salaries and benefits, and by paying excessive premiums for their own life insurance and automobile allowances. Albrizio asserts that, consequently, Adlife became under-capitalized and had to borrow monies. He estimates that, over fifteen years, these “disguised dividends” and “unnecessary borrowings” exceeded $3,000,000. Albrizio claims that, as a result of the defendants’ conduct, Adlife has suffered a considerable decline in its net worth and stock value. He also argues that he accounts for 60% of all revenues but receives only 33.3% of Adlife’s profits, and therefore has not been compensated for his share of sales and commissions.
*299 Albrizio filed this action on July 16, 2010. He asserts on behalf of both himself and Adlife a claim for breach of fiduciary duty/ disguised dividend (Count I); on behalf of only himself he asserts claims for breach of fiduciary duty/freeze out in a close corporation (Count II), breach of contract (Count III), quantum meruit (Count IV), and unjust enrichment (Count VII). He also seeks declaratory judgments to the effect that the non-competition agreement is unenforceable and that the amendment to that agreement must be extended to include email, internet and all social media (Counts v. and VI). He seeks $5,000,000 in damages.[2]
DISCUSSION
In order to withstand a motion to dismiss, a plaintiffs complaint must contain “allegations plausibly suggesting (not merely consistent with) an entitlement to relief, in order to reflect [a] threshold requirement . . . that the plain statement possess enough heft to sho[w] that the pleader is entitled to relief.” Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), quoting Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1966 (2007) (internal quotations omitted). While a complaint need not set forth detailed factual allegations, the plaintiff is required to present more than labels and conclusions, and must raise a right to relief “above the speculative level . . . [based] on the assumption that all the allegations in the complaint are true (even if doubtful in fact).” Id. See also Harvard Crimson, Inc. v. President & Fellows of Harvard Coll., 445 Mass. 745, 749 (2006).
The defendants first argue that the arbitration provision of the Agreement compels the plaintiffs to arbitrate this case. They contend that all of Albrizio’s claims arise out of the Agreement, the purpose of which was to address the “operation, ownership and control” of Adlife. The plaintiffs’ response is twofold. They first claim that Adlife did not sign the Agreement and is therefore not subject to its arbitration provision. They also argue that the present controversy does not arise from a specific term of the Agreement, and that arbitration would be too costly. The court is not persuaded.
Under G.L.c. 251, §1 “a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties shall be valid, enforceable and irrevocable . . .” “(W]here a contract has an arbitration clause that is ‘broad’ in its reach, there is a rebuttable presumption that a contract dispute is covered by the clause, and doubts whether a particular dispute comes within the scope of the clause should be resolved in favor of arbitration.” Warfield v. Beth Israel Deaconess Medical Center, 454 Mass. 390, 396 (2009); see also Drywall Sys., Inc. v. ZVI Constr. Co., 435 Mass. 664, 666-67 (2002). The phrase “arising out of’ constitutes broad language that invokes the presumption in favor of arbitration. Warfield, 454 Mass. at 396-97.
The court concludes that the claims set forth in Counts II, III, v. and VI all arise out of the “operation, ownership and control” of Adlife’s business. Count II, for breach of fiduciary duty, alleges a “freeze-out” where Albrizio claims he “has not been fully notified of corporate activities and has been excluded from participation in corporate affairs.” Count III, for breach of contract, alleges that he has not been compensated for sales and commissions for over three years. Counts v. requests a declaratory judgment that the non-competition agreement be declared unenforceable. None of these claims can be taken outside the operation and control of the corporation, which is clearly governed by the arbitration provision. As to Count VI, which seeks a declaration that the January 16, 2006, amendment to the non-competition agreement includes electronic media, the agreement itself provides that any controversy “arising out of this Agreement... shall be settled by arbitration ...” Given the strong public policy favoring arbitration, see Home Gas Corp. of Mass., Inc. v. Walter’s of Hadley, Inc., 403 Mass. 772, 774 (1989), the court concludes that the arbitration provision controls. Counts II, III, v. and VI must therefore be dismissed.
As to Counts IV and VII, for quantum meruit and unjust enrichment, Albrizio has asserted both tort and breach of contract claims which, if the defendants are held liable, will adequately compensate him for any losses. See, e.g., Fox v. F&J Gattozzi Corp., 41 Mass.App.Ct. 581, 589 (1996); see also MCI Worldcom Communications v. Department of Telecommunications, 442 Mass. 103, 116 (2004). Therefore Counts IV and VII must be dismissed.
The issue is somewhat different as to Count I, where Adlife is not a signatoiy to the Agreement and is thus not subject to the arbitration provision. The defendants contend that Count I is a derivative action that must be dismissed because the plaintiffs made no demand. See, e.g., S. Solomont & Sons Trust, Inc. v. New England Theatres Operating Corp., 326 Mass. 99, 113 (1950); Halprin v. Babbitt, 303 F.2d 138, 141 (1st Cir. 1962) (applying Massachusetts law). The plaintiffs argue that any demand would have been futile and that this requirement is therefore excused. See, e.g., Harhen v. Brown, 431 Mass. 838, 844 (2000). This argument is without merit.
If the only injuiy asserted is a diminution in the corporation’s worth or other financial injury to the corporation, a shareholder may not bring a direct action. In such circumstances, the corporation is the injured party with the right to sue. Hurley v. Federal Deposit Ins. Corp., 719 F.Sup. 27, 30 (D.Mass. 1989). The essence of Count I is that the defendants breached their fiduciary duly by paying family members excessive salaries and benefits and, as a result, needed to borrow money. Otherwise put, the defendants essentially diverted funds that otherwise would have inured to Adlife. Nothing in the complaint would lead the *300 court to infer that this conduct caused Albrizio to suffer an injury separate and distinct from that suffered by Adlife. The wrong is but indirect as to Albrizio, affecting him merely as a shareholder. See, e.g., Jackson v. Stuhlfire, 28 Mass.App.Ct. 924, 925 (1990). Count I must therefore be brought derivately.
Pursuant to Mass.R.Civ.P. 23.1, the complaint in a derivative action must be verified by oath and “allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for his failure to obtain the action or for not making the effort.” The demand would be futile, however, where the shareholders themselves are the wrongdoers and would be expected to, in essence, sue themselves. Harlen, 431 Mass. at 844. Under those circumstances, the demand requirement is excused. Id.; see also Houle v. Low, 407 Mass. 810, 813 n.13 (1990).
Here, the plaintiffs have failed to comply with the requirements of the Rule; Count I of the complaint is thus fatally defective. Not only is the complaint not verified, but it fails to state with particularity those conditions which would have excused the plaintiffs’ failure to make efforts to seek redress from the majority shareholders. See Aliberti v. Green, 6 Mass.App.Ct. 41, 45 (1972); see also J.W. Smith & H.B. Zobel, Rules Practice, §23.1.5 (1974) (“These requirements depart from the relaxed policy of ‘notice pleading’ which the Rules generally promote”). Although the plaintiffs contend in their memorandum that any demand would be futile, since both Puccio and DiGiovanni are alleged wrongdoers, this does not mitigate the deficiencies of the complaint. Failure to plead futility demands requires dismissal of Count I. Id. See also Thomas P. Billings, Remedies for the Aggrieved Shareholder in a Close Corporation, 81 Mass.L.Rev. 3, 13-14 (March 1996).
ORDER
For the forgoing reasons, the Defendants’ Motion to Dismiss the Plaintiffs’ Complaint is ALLOWED.

Nothing in the record before the court identifies Advision, although the language of the Agreement refers to both the “corporations” and the “corporation.”

The court notes at the outset that a plaintiff may not include in the complaint a claim for a specific monetary amount. See G.L.c. 231, §13B; Hermanson v. Szafarowicz, 457 Mass. 39, 44 (2010).