Lauriat, Peter M., J.
This putative class action arises from the sale of allegedly defective Acadia™ Combined Heating and Cooling Systems (the “Acadia System” or “System”), marketed, designed, assembled, manufactured, distributed and/or sold by defendants Bristol Compressors International (“Bristol”), F.W. Webb Company (“Webb”) and Hallowell International (“Hallowell”). Now before the court is Webb’s motion to dismiss and Bristol’s and Webb’s joint motion to deny class certification. For the following reasons, these motions are denied.
BACKGROUND
The court takes as true the following facts set forth in the plaintiffs’ Amended Class Action Complaint. Marshall v. Stratus Pharms., Inc., 51 Mass.App.Ct. 667, 670-71 (2001). Plaintiffs are two companies located in Massachusetts and eighteen individuals, located variously in Massachusetts, Pennsylvania, New Hampshire, Maine, Ohio, Wisconsin and Minnesota. *161 The plaintiffs bought the Acadia System in reliance upon assurances and representations made by Hallowell and communicated through its marketing materials and through Webb, its exclusive distributor. Using a wide spectrum of media, Webb and Hallowell claimed that the Acadia System “delivered affordable comfort in any season,” that it would result in “money savings up to 70%,” that it was “low maintenance” and “built to last.” The defendants represented that the purchase would include a five (5) year warraniy for parts, including a five (5) year warranty for the compressor, provided by Bristol. In reliance upon the above representations, the plaintiffs each purchased the Acadia System.
After the System was installed, and within the warranty period, it became evident that the System was defective and did not work as intended or represented. It frequently broke down because of alleged design flaws, requiring significant maintenance and repairs. The problems, as described in the Amended Complaint, appear to involve the failure of the compressor or one or more of its components.
When consumers informed Webb about the compressor failure, they were told that they would have to pay the full price for the compressor, and that neither Webb nor Bristol would warrant the compressor unless the System was sold within the previous year. Despite requests, all defendant have refused to make repairs under the warranty. All the named plaintiffs have incurred maintenance, repair and loss of use costs. A number of plaintiffs have had to replace their systems entirely, using different independent contractors; the others anticipate replacement of their systems in the near future.
The plaintiffs brought this action on behalf of themselves and all other consumers who bought Acadia Systems and, as a result, incurred the costs of repairs, maintenance and replacement. They argue that their claims are iypical of class members, that the defendants’ conduct is common to all members, that common questions predominate over any question of law or fact that may affect only individual class members, and that all members were injured by the defendants’ misconduct. The Amended Class Action Complaint asserts claims for deceptive and unfair trade practices pursuant to G.L.c. 93A (Count I); negligent misrepresentation (Count II); intentional misrepresentation (Count III); express breach of warranty (Count IV); breach of the implied warranty of fitness of purpose (Count V); and unjust enrichment (Count VI). The plaintiffs seek compensatory and punitive damages. Webb has now moved to dismiss Counts II and III. Webb and Bristol have moved to deny class certification.[1]
DISCUSSION
I. Motion to Dismiss
In general, to withstand a motion to dismiss, a plaintiffs complaint must contain “allegations plausibly suggesting (not merely consistent with) an entitlement to relief, in order to reflect [a] threshold requirement . . . that the plain statement possess enough heft to sho[w] that the pleader is entitled to relief.” Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), quoting Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1966 (2007) (internal quotations omitted).
A. Negligent Misrepresentation (Count II)
To succeed in a claim of negligent misrepresentation, a plaintiff must establish that “in the course of his business, . . . [he] supplies false information for the guidance of others in their business transactions, [such a person] is subject to liability for pecuniary loss caused to [the others] by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.” Fox v. F&J Gattozzi Corp., 41 Mass.App.Ct. 581, 587-88 (1996). “An individual who makes negligent misrepresentations has honest intentions but has failed to exercise due care.” Sound Techniques v. Hoffman, 50 Mass.App.Ct. 425, 432-33 (2000).
The plaintiffs contend that Hallowell and Webb made false and misleading representations in their marketing campaigns to induce the plaintiffs to buy the Acadia System. More specifically, the Amended Complaint asserts that Hallowell and Webb “misrepresented to Plaintiffs and the Class that the purchase of their Product would result in substantial cost-savings, would be reliable, and would require little maintenance.” Compl., ¶104. The defendants reportedly delivered this message “in multiple advertising mediums [sic], using a variety of claims intended to persuade consumers that the Product was innovative and had superior technology that was cost-effective, reliable, and low maintenance.” Id. See also Compl. ¶¶110,117,122. According to the Amended Complaint, the defendants “defrauded” the plaintiffs and other consumers through an “integrated marketing campaign” designed to sell “an inherently flawed and defective product.”
The defendants assert that Count II must be dismissed because the plaintiffs may not recover on their claim of negligent misrepresentation under the economic loss doctrine, which prohibits recovery of purely economic losses in tort actions in the absence of personal injury. See, e.g., Bay State-Spray & Provincetown S.S., Inc. v. Caterpillar Tractor Co., 404 Mass. 103, 107 (1989). This argument falls wide of the mark. “The economic loss doctrine derives from negligence and strict liability actions ... it... does not apply to pecuniary loss incurred as a result of an actionable misrepresentation.” Passatempo v. McMenimen, 461 Mass. 279, 302 (2012).[2] Count II will therefore not be dismissed.
B. Intentional Misrepresentation (Count III)
A claim of intentional or fraudulent misrepresentation is somewhat different in that the plaintiff “must establish that the defendants made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff reasonably relied upon the representation as true and acted upon it to his damage.” *162 Russell v. Cooley Dickinson Hosp., Inc., 437 Mass. 443, 458 (2002), and cases cited. Claims for negligent misrepresentation and intentional misrepresentation therefore differ in that the latter requires proof of the intent of the misrepresenting party. Sound Techniques, 50 Mass.App.Ct. at 432. In support of its motion to dismiss Count III, Webb argues that the factual allegations that form the basis of these claims do not satisfy the strict pleading requirements of Mass.R.Civ.P. 9(b), pursuant to which fraud and deceit must be pled .with particularity. Rule 9(b) is .the exception to the rule that on a 12(b)(6) motion to dismiss, a plaintiff is to be given the benefit of the doubt. Equipment & Sys. for Indus., Inc. v. Northmeadows Constr. Co., Inc., 59 Mass.App.Ct. 931, 931 (2003). “At a minimum, a plaintiff alleging fraud must particularize the identity of the person(s) making the representation, the contents of the misrepresentation, and where and when it took place. In addition, the plaintiff should specify the materiality of the misrepresentation, its reliance thereon, and resulting harm.” Id. at 931-32.
“Malice, intent, knowledge, and other condition of mind of a person may be averred generally.” Mass.R.Civ.P. 9(b). See also Rodi v. Southern New England Sch. of Law, 389 F.3d 5, 15 (1st Cir. 2004) (specificity requirement extends only to the particulars of the allegedly misleading statement itself. The other elements of fraud, such as intent and knowledge, may be averred in general terms (interpreting the cognate Federal Rule)). Because malice, intent, knowledge and the state of mind of the person making the alleged misrepresentation need not be stated with the same particularity as the circumstances of the misrepresentation, the heightened pleading standard is satisfied where the pleader specifies “the who, what, where, and when of the allegedly false or fraudulent representation.” Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 29 (1st Cir. 2004).
The defendants contend that the Amended Complaint fails in this regard. The court does not agree. The Complaint states that Hallowell advertised in written material and on its website that the Acadia System would “eliminate the need for additional components” and promised that it “would operate efficiently in temperatures as low as 30 degrees below zero, knocking as much as 70 percent off the cost of traditional baseboard heat.” Compl., ¶34. Hallowell’s website and brochures stated that the System “was designed to provide years of comfort and reliability” and that using “electricity efficiently means that Acadia can provide savings up to 70% over other traditional heating systems.” Compl., ¶36. The complaint also states that Hallowell made claims of reliability, including that the System was “(m]ade from time tested and industry standard components” and “will provide you with years of service” such that a consumer would not “have to worry about maintaining peak efficiency and comfort for the many heating and cooling seasons to come.” Id. According to the complaint, Hallowell claimed “constant year round savings ... low maintenance . .. and low installation cost.” Id. It represented that the System was “built to last.” Id. Finally, the defendants represented that they would include a five-year warranty for parts, including the compressor.
The Amended Complaint further alleges that Hallowell distributed its marketing materials to Webb. That Webb itself did not write the advertising materials or brochures, nor make any statements on Hallowell’s website is of no moment. In the business world, a distributor, who may sell multiple brands of any particular product, would have no need to generate an entirely new set of materials when those had already been provided by the manufacturer. A distributor is in no position to extol the virtues of each and every product it sells; to the contrary, it is the manufacturer who possesses more intimate knowledge and who reaps the benefit of a successful advertising campaign. Webb, therefore, was entitled to rely on Hallowell’s representations.
In reliance on those representations, which at this stage the court attributes to both Hallowell and Webb, the plaintiffs bought one or more Acadia Systems, at a cost of approximately $10,000 or more each. In many cases, the costs of repairs ran in the thousands of dollars, and replacements cost about the same as the original unit. Finally, although the complaint does not specify the exact dates on which the defendants made the alleged misrepresentations, the court can infer, since they were on a website and in a brochure, that they were ongoing. With respect to each named plaintiff, the Amended Complaint asserts that the Systems failed less that three years from the date of purchase. That is sufficient to identify when the representations were made. The court concludes that the Amended Complaint alleges with particularity the circumstances of the purported intentional misrepresentation sufficient to satisfy the requirements of Mass.R.Civ.P. 9(b). Count III will therefore not be dismissed.
II. Motion to Deny Class Certification
Webb and Bristol contend that the court cannot certify a nationwide class because Massachusetts does not allow class members to “opt out.” Therefore, a nationwide class can only be certified if the non-resident members have had constitutionally adequate “minimum contacts” with Massachusetts. As to a Massachusetts-only class certification, the defendants assert that the Amended Complaint demonstrates that individual issues predominate over common questions. They point to the variety of problems alleged, the multimedia advertising, and the repair and replacement of the Systems by multiple contractors. The predominance factor, the defendants claim, cannot therefore be satisfied.
*163 The court considers the class certification issue to be premature. The defendants have filed no answer and there has been no discovery. Hence, no factual record exists with respect to minimum contacts between the plaintiffs and Massachusetts. Nor have the plaintiffs had the opportunity conduct targeted discovery to proffer evidence that common questions predominate. Therefore, the court, in its discretion, denies without prejudice the defendants’ Joint Motion to Deny Class Certification. See, e.g., Massachusetts General Hosp. v. Rate Setting Comm’n, 371 Mass. 705, 713 (1977).
ORDER
For the foregoing reasons, Defendant F.W. Webb Company’s Motion to Dismiss Pursuant to Mass.R.Civ.P. 12(b) (Paper #16) is DENIED. Defendants’ Motion to Deny Class Certification (Paper #17) is also DENIED, without prejudice.

 While the plaintiffs have styled their claims as a class action, they have not yet moved for or sought certification of any class or classes.

 The defendants cite two cases from the United States District Court for the District of Massachusetts for the proposition that the Massachusetts appellate courts are likely to apply the exception to the economic loss doctrine only to those claims of negligent misrepresentation that involve the provision of services. See Sebago, Inc. v. Beazer East, Inc., 18 F.Sup.2d 70 (D.Mass. 1998), and Cruickshank v. Clean Seas Co., 346 B.R. 571 (D.Mass. 2006). The Massachusetts appellate courts have as yet made no such distinction. See, e.g., Nota Constr. Corp. v. Keys Assocs., Inc., 45 Mass.App.Ct. 15, 20 (1998); Passatempo v. McMenimen, 461 Mass. 279, 302 (2012) (citing Nota Constr.).