Sanders, Janet L., J.
The motions before this Court are yet another example of misguided attempts by some members of the business bar to use summary judgment as the vehicle to decide issues which by their nature almost always require resolution at trial. Faced with claims that include elements regarding the defendant’s knowledge and the reasonableness of plaintiffs reliance — all questions of fact — each of the three individual defendants ask this Court to rule that they are nevertheless entitled to judgment in their favor as a matter of law as to certain counts asserted against them. They do so under the mistaken impression that, if the summary judgment record contains testimony supporting their position, the facts that such testimony concerns are therefore undisputed even though there is circumstantial evidence which would support the contrary position. “The question of whose interpretation of the evidence is more believable ... ‘is not for the court to decide on the basis of [briefs and transcripts] but is for the fact finder after weighing the circumstantial evidence and assessing the credibility of the witnesses.’ ” Bulwer v. Mt. Auburn Hospital, 473 Mass. 672, 689 (2016), quoting Lipchitz v. Raytheon Co., 434 Mass. 493, 499 (2001). With this in mind, this Court concludes that the summary judgment motions must be DENIED as to all counts to which they pertain, except for two counts which add nothing to plaintiffs case and are without any legal basis.[1]
This case arises from plaintiffs’ purchase of common stock in the defendant Progressive Gourmet, Inc. *9 (Progressive), a close corporation, and plaintiff George Noble’s loan to Progressive of $300,000. Progressive is not moving for summary judgment. The moving parties are Progressive CEO Richard Foster and two individuals, Christopher Collias (Chris) and his wife Julie Collias (Julie), who hold the majority of shares in the company and together owned one block of stock that was sold to the plaintiffs. Julie is also Progressive’s treasurer and Chris a former CEO in the company.
The motions before the Court do not concern the promissory note (Count VI) and are only partially dispositive as to both Chris and Foster.[2] Although the three motions are not identical as to the counts that each of them targets, together they concern the following claims: violation of the Blue Sly Statute, G.L.c. 110A, §410 (Section 410) (Count I); fraud (Count II); negligent misrepresentation (Count III); violations of Chapter 93A (Counts IV and V); and unjust enrichment (Count VII).
Section 410 prohibits the sale of securities by means of any untrue statement of material fact or material omission. The statute offers strong protections to buyers at the same time that it creates a strong incentive for sellers of securities to make full disclosure. To achieve those purposes, described as both “redressive” and “preventive,” the statute imposes a burden of proof on the plaintiff which is considerably lighter than that which applies to common-law misrepresentation cases. Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. 43, 52 (2004). Although it does not impose strict liability, it does shift the burden of proof with regard to what the defendant knew or should have known at the time that the sale was made, placing that burden on the defendant.
Section 410(a)(2) assigns primary liability to the “seller” of the security as that term has been construed by the case law. See e.g., Hays v. Ellrich, 471 Mass. 592, 598-601 (2015) (investment adviser who solicited sale is “seller” under 410(a)(2)). Section 410(b) assigns secondary liability to: 1) every officer or director of the seller; 2) every person who “directly or indirectly controls a seller,” and every “agent who materially aided in the sale . . .” Each of the defendants, for reasons specific to him or her, argues that Section 410 does not apply to them. The defendants’ arguments notwithstanding, there is evidence in the summary judgment record to support the conclusion that all three defendants are covered by the statute. As to Foster in particular (whose summary judgment motion as to this Count focuses solely on this issue) this Court concludes that there are sufficient facts from which a jury could conclude that he acted as an “agent” for the Colliases as to that block of stock that the Colliases sold to the plaintiffs.
Section 410 does permit an affirmative defense to liability: if the defendant can prove by a preponderance of the evidence that she did not know and “in the exercise of reasonable care,” could not have known, that the statement was false when made, then the defendant is not liable. Julie Collias asks this Court to rule that, as a matter of law, she has sustained that burden of proof. The plaintiffs’ memorandum submitted in opposition to her motion sets forth in detail all the evidence in the summary judgment record from which a rational trier of fact could reach a different conclusion. Defendant’s argument is all the more surprising, given that the Supreme Judicial Court has described this burden as a “heavy” one which is “difficult to sustain.” Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. at 52. Certainly, it is a fact intensive inquiry almost always left to the factfinder. Massachusetts Mutual Life Ins. Co. v. DB Structured Products, Inc., 110 F.Sup. 288, 297 (D.Mass. 2015), and cases cited therein. Admittedly, the plaintiffs’ case against Julie appears to be weak, given her limited involvement in Progressive and the stock sales at issue. That a plaintiff is not likely to succeed at trial, is not the relevant standard for summary judgment, however.
The common-law claims of fraud and negligent misrepresentation rest on the same set of allegations, the only difference being the allocation of the burden of proof. That is, it is incumbent on the plaintiff to prove that the defendant had the requisite state of mind necessary for liability to attach. The plaintiff must also prove reasonable reliance on the misrepresentation. Defendants contend that the evidence is insufficient as to both of these issues. The question is not whether plaintiffs will prevail at trial, however, but whether there is a material dispute of fact as to these elements, which are by their nature quite fact intensive. As a consequence, the case law is clear that summary judgment is a disfavored remedy where it relates to a party’s knowledge or state of mind. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Quincy Mut. Fire Ins. Co. v. Abernathy, 393 Mass. 81, 86 (1984); White v. Seekonk, 23 Mass.App.Ct. 139, 141 (1986). That is equally true with respect to whether a party exercises reasonable care, since that necessarily depends on the circumstances. See Fox v. F&J Gattozzi Corp., 41 Mass.App. 581, 588 (1996); see also Restatement (Second) Torts 552 (1977), comment e (noting that what is reasonable is a “question for the jury, unless the facts are so clear as to permit only one conclusion”). Here, there are clearly material fact disputes on these issues.
Count IV, alleging a violation of 93A in connection with the securities sales, survives in light of this Court’s ruling regarding the fraud claim. Count V, however, alleges a different 93A violation — namely, that the defendants failed to make a reasonable settlement offer after receiving a 93A demand letter. A demand letter is a condition precedent to suit; although its purpose may be to encourage negotiation and settlement, this Court is unaware of any case law outside of the insurance context to suggest that the *10 failure to make a settlement offer in and of itself is an unfair and deceptive practice. Indeed, there is some authority to the contrary. See e.g., Da Silva v. U.S. Bank, N.A., 885 F.Sup.2d 500, 506 (D.Mass. 2012), and cases cited therein. Although the defendant’s response to the 93A demand letter (or lack thereof) may be relevant to the surviving 93A count, there is no reason for this additional count to remain in the case.
This Court also sees no legal basis for a claim of unjust enrichment (Count VII). That is an equitable remedy which is available only if a party does not have an adequate remedy at law. Here, plaintiffs clearly have common-law and statutory claims. That the plaintiffs may fall short of proving the facts necessary to sustain recovery on those claims does not mean that they can then rely on a theory of unjust enrichment. So long as the legal remedies are viable, that is enough. Ruggers, Inc. v. U.S. Rugby Football Union, Ltd., 843 F.Sup. 139, 148 (D.Mass. 2012).
For all the foregoing reasons, it is ORDERED that, as to Counts V and VII of the Complaint, the defendants’ motions are ALLOWED, so that those counts are DISMISSED. As to the remaining counts, each defendant’s Motion is DENIED.

 The penchant of some members of the plaintiffs bar to add as many counts as possible to a Complaint tends to exacerbate the problem highlighted by this opinion, since this practice tends to invite summary judgment from the other side where those counts are particularly weak.

 The Business Litigation Session has by a procedural rule attempted to discourage the use of partially dispositive motions by requiring counsel to consult with the court first before serving them. Unaware of this procedural order, defense counsel had already served their motions on plaintiffs counsel before that consultation took place. Because counsel had already expended substantial time in preparing the motions, this Court felt compelled to permit them without inquiring into their substantive merit. In hindsight, this was a mistake.